[Crim. No. 1273.    In Bank.—November 27, 1905.]

Ex Parte K. SOHNCKE, on Habeas Corpus.

STATUTORY CONSTRUCTION—REPEAL BY IMPLICATION—TAKING EFFECT OF STATUTES—CONSTITUTIONAL LAW.—Where two acts are inconsistent, and both are otherwise valid, one previously passed which takes effect sixty days after its passage, is impliedly repealed by an inconsistent act passed one day later which takes effect immediately; but if the latter act is unconstitutional in its conflicting provisions, it cannot have the effect to repeal the former by implication.

ID.—PENAL STATUTES—LOANS ON PERSONAL PROPERTY—REGULATION OF CORPORATIONS — UNCONSTITUTIONAL PENALTIES — REPEAL NOT IMPLIED.—The act of March 21, 1905, regulating loans of money on personal property by incorporated associations, though it took effect immediately, cannot work an implied repeal of the prior act of March 20, 1905, regulating the rates of interest and charges on chattel mortgages on certain personal property, which took effect sixty days after its passage, for the reason that the act later in date, in so far as it purports to make a criminal offense of the same acts punishable by the earlier statute, is unconstitutional, as not being uniform in the operation of its penal provisions.

CHATTEL MORTGAGES — IMPROPER DISCRIMINATION — INVALID LAW.—The act of March 20, 1905, fixing the rates of interest and charges on chattel mortgages on specified kinds of personal property, and prescribing penalties for its violation, improperly discriminates in favor of other chattel mortgages upon other kinds of personal property allowed by law to be mortgaged, and violates the state constitution, as not being uniform in its operation, and as granting to a class of citizens privileges and immunities not given to all citizens, and also violates the fourteenth amendment to the constitution of the United States in denying to some. citizens the equal protection of the laws.

PETITION to the Superior Court for discharge on Writ of Habeas Corpus.

The facts are stated in the opinion of the court.

Charles W. Slack, for Petitioner.

John J. Allen, District Attorney, W. H. L. Hynes, Deputy District Attorney, and Aylett R. Cotton, for Respondent.

VAN DYKE, J.—The petitioner was charged and convicted of the crime of loaning one hundred dollars in money upon

the security of a chattel mortgage upon certain furniture
and household goods at a rate of interest exceeding one and
one half per cent a month, and charging more than five
dollars for the examination and valuation of the mortgaged
chattels and the preparation of the mortgage.   These acts
are the subject of legislation in two laws passed by the
legislature of 1905 upon different days,—namely, the act of
March 20, 1905, entitled ''An act fixing the rates of interest
and charges upon loans on chattel mortgages on certain per-
sonal property, and prescribing the penalties for the violation
of the act'' (Stats. 1905, p. 422, c. 354), and the act approved
March 21, 1905, entitled ''An act to provide for the incorpora-
tion of associations for lending money on personal property,
and regulating the same, and to forbid certain loans of money,
property, or credit'' (Stats. 1905, p. 711, c. 550).   Each one
of these laws made the particular acts charged in the com-
plaint upon which the petitioner was convicted a misdemeanor.
The petitioner was convicted and sentenced to pay a fine of
one hundred dollars, with imprisonment if the fine was not
paid.   He asks to be released from custody on the ground that
the above-mentioned statutes are unconstitutional.   The act
of March 20, 1905, prescribes no time when it takes effect;
hence did not take effect until May 19, 1905.   (Pol. Code,
sec. 323.)   The act of March 21st by its terms was to take
effect immediately upon its passage.   Under these circum-
stances, if the two acts are inconsistent, and both are otherwise
valid, that of March 21st, so far as the inconsistency extends,
will prevail, and the former act will stand to that extent
repealed.   (*Goodwin* v. *Buckley,* 54 Cal. 295; *County of San
Luis Obispo* v. *Felts,* 104 Cal. 66, [37 Pac.780]; *County of
Mariposa* v. *County of Madera,* 142 Cal. 55, [75 Pac. 572].)
If, however, the conflicting part of the latter act is itself
unconstitutional, and consequently void, it will not have the
effect of repealing by implication the former act.   (*McAllister*
v. *Hamlin,* 83 Cal. 361, [23 Pac. 357]; *Orange County* v.
*Harris,* 97 Cal. 602, [32 Pac. 594]; *Los Angeles* v. *Hance,*
122 Cal. 77, [54 Pac. 387].)

Upon an examination of the provisions of the act of March
21, 1905, we are of the opinion that the portions thereof
which purport to make a criminal offense of the same acts
which are the subject of legislation in the previous statute

of March 20, 1905, are unconstitutional, and hence that they do not have the effect of repealing the prior act. This act of March 21st authorizes the formation of certain classes of corporations which are to be licensed and empowered to loan money in sums not exceeding three hundred dollars to any one person, upon the security of pledges or mortgages of personal property, and to charge interest thereon at a rate not over one and one half per cent a month, and certain sums for expenses in connection with such loans. By section 12 of this statute the acts charged against the petitioner in the complaint under consideration, when committed by any person except the corporations therein authorized, are made a misdemeanor, and punishable by a fine of one hundred dollars for the first offense, and by a like fine and imprisonment for thirty days in the county jail for the second and each subsequent offense, and also by a forfeiture of the interest thereon to the borrower. By section 6 the corporations thereby authorized are allowed to charge interest upon loans made by them "at a rate not exceeding one and one half per cent a month," and by section 13 any director, officer, or employee of such corporation who shall charge, take, collect, or receive any compensation on a loan beyond the charge therein allowed, "shall be guilty of a misdemeanor and be fined not to exceed one hundred dollars or be imprisoned in the county jail for not more than six months, or both." The same section provides that if a corporation organized under the act shall willfully violate any of the provisions of the act, by which any person shall suffer loss or damage, it shall forfeit its right to do business, and the attorney-general shall thereupon take the necessary legal measures to wind up and discontinue the business thereof. The offenses defined in section 12, as above mentioned, are made a misdemeanor by the terms of the section only when the acts constituting the offense are committed by some "person, firm or corporation, other than corporations organized pursuant to this act." It is manifest that these provisions of the law transgress that provision of the constitution requiring that all laws shall be uniform in operation. The same acts are made punishable by different degrees of punishment according as they may be committed by officers, servants, or employees of the corporations authorized by this particular statute, or by other persons or corporations.

The punishment, if the acts are committed by officers of such special corporations, may be any sum less than one hundred dollars, and the imprisonment for the second or any subsequent offense may be for any period less than six months. It will be seen that the punishment may be very much less in such cases than the fixed sum of one hundred dollars for the first offense and the same sum and imprisonment for thirty days for the second and each subsequent offense, which is imposed in case the crime is committed by some person other than the officers of such corporations. There can be no valid ground for such discrimination in favor of the officers of such special corporations. If the magistrates in the locality in which such corporations may be doing business should see fit, they could by imposing light fines practically allow such corporations to charge the forbidden rates, while all other persons would be prohibited from so doing. The uniformity of operation of the law would depend entirely upon whether or not the fines imposed upon such officers were in all cases made precisely the same as those imposed upon other persons regardless of the character of the circumstances attending the offense. Such legislation is clearly a violation of the constitutional restriction. The penal clauses of section 12 of the act are therefore unconstitutional and void, and being so, they cannot operate to repeal by implication the previous act of March 20th, nor can they otherwise affect the present case.

The remaining point in the case is the contention of the petitioner that the act of March 20, 1905, is unconstitutional. It is claimed that the law is not uniform in its operation upon those engaged in the business to which it relates, and therefore is contrary to the provision that all laws of a general nature shall have a uniform operation (art. I, sec. 11); that it secures special privileges and immunities to a part of those engaged in such business which are denied to others, and therefore is in violation of section 21 of article I of the constitution, forbidding the granting to a class of citizens privileges or immunities which, upon the same terms, are not given to all citizens; and that it denies to some citizens the equal protection of the laws, and therefore is in violation of the fourteenth amendment to the constitution of the United States. Section 1 of the act (Stats. 1905, p. 422, c. 354) is as follows: "It shall not be lawful for any individual,

partnership, association or corporation lending money upon chattel mortgages, where there is taken for such loan any security upon any upholstery, furniture or household goods, oil paintings, pictures or works of art, pianos, organs or sewing machines, iron or steel safes, professional libraries or office furniture or fixtures, instruments of surveyors, physicians or dentists, printing-presses or printing material, to have or charge for the use of money so loaned more than the rate of one and one half per cent per month interest thereon, and that no additional sum, either in the way of loans or otherwise, shall be required or exacted of the borrower or borrowers; and further, that no charge for examination or valuation of property offered, insurance of same, and preparation, execution and recording of necessary papers shall be imposed except as follows: For examination or valuation of property offered for mortgage and preparation of papers (both included), no greater sum than five dollars, where the amount loaned does not exceed three hundred dollars. For necessary affidavits, recording of papers, and fire-insurance premiums, the amounts actually to be paid for same, provided that the foregoing charges may be deducted from the principal of the loan when the same is made; and provided further, that in no case shall it be lawful to deduct interest in advance, nor make any charge for extension of loans, nor to divide or split up loans under any pretense whatsoever for the purpose of requiring or exacting any other or greater charges than prescribed herein." Section 2 of the act makes any violation of the provisions of the act a misdemeanor, punishable by a fine of one hundred dollars for the first offense, and a like fine and imprisonment in the county jail for thirty days for the second and each subsequent offense; and further, that any agreement to pay interest above that allowed in the act shall be void.

A law which applies alike to all the subjects upon which it acts, or, in other words, a law which applies equally to all persons or things within a legitimate class to which alone it is addressed, does not violate the provision requiring laws of a general nature to have a uniform operation, and is neither local nor special. (*People* v. *Henshaw*, 76 Cal. 446, [18 Pac. 413]; *Ex parte Halsted*, 89 Cal. 472, [26 Pac. 961]; *Cody* v. *Murphey*, 89 Cal. 524, [26 Pac. 1081]; *Abeel* v.

*Clark,* 84 Cal. 230, [24 Pac. 383] ; *Summerland* v. *Bicknell,* 111 Cal. 569, [44 Pac. 232] ; *Hellman* v. *Shoulters,* 114 Cal. 147, [44 Pac. 915,.45 Pac. 1057].) In *Hellman* v. *Shoulters* the court says: ''It has been uniformly held that a law is general which applies to all of a class—the classification being a proper one—and that the requirement of uniformity is satisfied, if it applies to all of the class alike. The word 'uniform' in the constitution does not mean 'universal.' The section intends simply that the effect of general laws shall be the same to and upon all persons who stand in the same relation to the law—that is, all the facts of whose cases are substantially the same.'' The classification, however, is not a proper one for distinct legislation, if it is not founded upon some natural, intrinsic, or constitutional distinction, a distinction which bears some relation to, or furnishes cause for, the particular legislation embraced in the act. (*Pasadena* v. *Stinson,* 91 Cal. 251, [27 Pac. 604] ; *Darcy* v. *Mayor,* 104 Cal. 645, [38 Pac. 500] ; *Bruch* v. *Colombet,* 104 Cal. 351, [38 Pac. 45] ; *Rauer* v. *Williams,* 118 Cal. 401, [50 Pac. 691] ; *Budd* v. *Hancock,* 66 N. J. L. 135, [48 Atl. 1023] ; 26 Am. & Eng. Ency. of Law, 2d ed., 683.) Upon this subject the supreme court of the United States has said that the state, ''in prescribing regulations for the conduct of trade, cannot divide those engaged in trade into classes and make criminals of one class if they do certain forbidden things, while allowing another and favored class, engaged in the same domestic trade, to do the same things with impunity,'' and that it cannot discriminate ''by declaring that particular classes within its jurisdiction shall be. exempt from the operation of a general statute making it criminal to do certain things connected with domestic trade or commerce. Such a statute is not a legitimate exercise of the power of classification, rests upon no reasonable basis, is purely arbitrary, and plainly denies the equal protection of the laws to those against whom it discriminates.'' (*Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 563, [22 Sup. Ct. 440].) This was said with respect to a law prohibiting combinations between persons engaged in trade, but exempting from its provisions farmers and stockraisers. A similar ruling was made in Illinois in regard to a statute restricting the number of persons a lodging-house keeper could allow to sleep in a single room, but making no

restriction upon the number that might be permitted by the keeper of a hotel or boarding-house. (*Bailey* v. *People*, 190 Ill. 28, [60 N. E. 98, 83 Am. St. Rep. 116].) The business of loaning money is as much a part of domestic trade and commerce as any other legitimate business. There is no substantial reason why those who lend money in sums not exceeding three hundred dollars on chattel mortgages of upholstery, pictures, or works of art, pianos, organs, sewing-machines, safes, professional libraries, or office furniture or fixtures, instruments of surveyors, physicians, or dentists, printing-presses, or printing material, should be limited in their charges and the business they do in that respect made less profitable than it otherwise would be, while they or others who lend on chattel mortgages upon instruments of a photographer, live-stock, agricultural implements, equipments of livery stables, or other property allowed to be mortgaged by section 2955 of the Civil Code (Stats. 1905, p. 36, c. 40), and not enumerated in the act under consideration, or who lend upon pledges of any kind of personal property, or who lend in sums exceeding three hundred dollars upon any kind of security, should be allowed to exact any rate of interest or other charge which they can obtain from the borrower. It is a part of the same kind of business, and there is no distinction between the particular classes of persons or things affected by the act and those exempted from its provisions that will justify special legislation. It may be that such exorbitant charges should be absolutely prohibited, but, if so, the prohibition should be made general, and should extend to all who engage in the business as lenders on the one hand, and should protect all who are made the victims thereof on the other hand, without discrimination in favor of any. There is a clear distinction between this case and the case of *Ex parte Lichtenstein*, 67 Cal. 359, [7 Pac. 728, 56 Am. Rep. 713], in which the court held valid a law regulating the business of licensed pawnbrokers. The business of pawnbroking is one well known to the law, and constitutes of itself a distinct class of persons and things which may be properly regulated by a law applying to them alone, as was clearly held in the decision in that case.

We are of the opinion that the law violates the constitutional provisions above set forth, that the petitioner has been convicted of a crime which has no legal existence, and that the

judgment of conviction is consequently void, and that the petition should be granted.

It is ordered and adjudged that the petitioner be forthwith discharged from custody.

Shaw, J., Angellotti, J., Lorigan, J., and Henshaw, J., concurred.

McFARLAND, J.—I concur in the judgment discharging the petitioner.