[Crim. No. 2933. In Bank.—March 4, 1927.]

## In the Matter of the Application of W. WASHER for a Writ of Habeas Corpus.

[1] Usury Law—Construction—Evidences of Debt—Criminal Law. By use, in section 3 of the "Usury Law" (Stats. 1919, p. lxxxiii), of the phrase, " . . . secured by mortgage . . . or other evidence of debt, except corporation bonds and municipal and other bonds . . . ," is meant that no offense could be committed by a loan at any rate of interest, however large, upon such property as security; and the preceding words, such as mortgage, trust deed, bill of sale, assignment, pledge or receipt, should be construed to be in and of themselves evidence of debt in the broader sense of that term.

[2] ID. — LOANS — DISCRIMINATION AS TO SECURITY — CONSTITUTIONAL LAW.—There is no intrinsic, economic, constitutional, or other reason for a discrimination between loans on ordinary security and loans upon corporate, municipal, or other public bonds, and as section 3 of the "Usury Law" makes such discrimination, this provision is void as being in contravention of the constitution.

[3] ID.—SECTIONS 1 AND 2 OF USURY LAW—CONSTRUCTION.—Sections 1 and 2 of the "Usury Law" are intended to cover secured as well as unsecured loans.

[4] ID.—CORPORATE BONDS—SALE AT DISCOUNT—LOANS.—The sale at discount by corporate borrowers, such as corporations, municipal, and other public corporations, of bonds of their own issue, is not a loan within the meaning of the "Usury Law," and was never intended to be subject to the operation of any of the provisions of this statute.

[5] STATUTORY CONSTRUCTION—CONSTRUCTION OF STATUTES TOGETHER—RULE.—A statute should be construed in the light of other existing legislation touching the same subject matter and statutes *in pari materia* are to be construed together.

[6] USURY LAW—EFFECT ON OTHER STATUTES—CONSTRUCTION.—It was not the intent of the "Usury Law" to repeal or modify or impair the integrity of any existing laws relating to the issuance, sale, or negotiation of securities now authorized or supervised by any such laws.

[7] ID.—LOAN ON CORPORATE SECURITIES—APPLICATION OF USURY LAW. A loan upon corporate bonds as security in excess of the legal rate would be just as usurious as a loan on any other class of security.

[8] HABEAS CORPUS—REHEARING—PRACTICE.—There is no practice in the supreme court allowing petitions for rehearing in case of *habeas corpus.* (On denial of rehearing.)

---

(1) 12 C. J., p. 924, n. 1, p. 1145, n. 5, p. 1159, n. 28; 39 Cyc., p. 910, n. 10.   (2) 12 C. J., p. 791, n. 19; 36 Cyc., p. 1108, n. 46, p. 1109, n. 47, 48, p. 1115, n. 97, p. 1116, n. 4, 5, 6, 7, p. 1117, n. 15, 16, p. 1131, n. 72, 73, p. 1132, n. 78.   (3) 12 C. J., p. 1147, n. 9. (4) 39 Cyc., p. 910, n. 13.   (5) 39 Cyc., p. 913, n. 34.   (6) 36 Cyc., p. 1147, n. 27, 28, 29, 30, p. 1148, n. 31.   (7) 37 C. J., p. 213, n. 65; 36 Cyc., p. 976, n. 27; 39 Cyc., p. 936, n. 29.   (8) 29 C. J., p. 192, n. 18 New; 39 Cyc., p. 936, n. 29.

2.  See 23 Cal. Jur. 734; 25 R. C. L. 967.
5.  Usury in underwriting an issue of securities at less than par, note, 45 A. L. R. 570.
6.  See 23 Cal. Jur. 785; 25 R. C. L. 1060.

APPLICATION for a Writ of Habeas Corpus to re-
lease petitioner from custody after conviction of viola-
tion of the Usury Act. Writ discharged. Petitioner re-
manded.

The facts are stated in the opinion of the court.

Charles Greenberg, Schweitzer & Hutton and Henry
Haves, for Petitioner.

J. M. Friedlander, City Prosecutor, E. J. Lickley, City
Prosecutor, Vernon S. Gray and Ford M. Jack, Deputies
City Prosecutor, for Respondent.

Laurence W. Beilenson, Gibson, Dunn & Crutcher and
Norman S. Sterry, *Amici Curiae.*

PRESTON, J.—Petitioner was convicted and impris-
oned for violation of the statute known as the "Usury
Act," the complaint alleging that he "did wilfully and
unlawfully ask, demand, receive, take, accept and charge
of and from" certain individuals more than twelve per
cent per annum on a $7,000 loan "for the forbearance, use
and loan of said sum of money; payment . . . being se-
cured by an evidence of debt, to wit: a trust deed upon
real property . . . and by a promissory note" executed
in favor of petitioner.

The district court of appeal rendered a decision dis-
charging the writ of *habeas corpus* and remanding peti-
tioner to custody (*In re Washer*, 78 Cal. App. 758 [248 Pac.
1068]), whereupon he again petitioned for his release from
durance upon the ground, as hereinafter set forth, that
the said Usury Law is unconstitutional and void.

This contention requires a consideration of the statute
approved by popular vote November 5, 1918 (Stats. 1919,
p. lxxxiii), known as the "Usury Law," and particularly
that portion of section 3 thereof which reads as follows:

"And any person, company, association or corporation,
who shall ask, demand, receive, take, accept or charge more
than twelve per centum per annum upon the sum of money
actually loaned for the forbearance, use or loan thereof,
when the repayment of the money loaned shall be secured

by a mortgage, trust deed, bill of sale, assignment, pledge, receipt or other evidence of debt, except corporation bonds, and municipal and other public bonds, upon property, real or personal . . . shall be guilty of a misdemeanor and upon conviction thereof shall be punished for the first offense by a fine of not less than twenty-five dollars nor more than three hundred dollars, or by imprisonment not more than six months, or by both such fine and imprisonment, and for each subsequent offense and conviction shall be punished by a fine not less than one hundred dollars nor more than five hundred dollars and by imprisonment not less than six months nor more than one year.''

The storm center of attack is the portion thereof which, when paraphrased, reads: ''And any person . . . who shall . . . charge more than twelve per centum per annum upon the sum . . . loaned . . . when repayment . . . shall be secured by a mortgage, . . . or other evidence of debt, except corporation bonds, and municipal and other public bonds . . . shall be guilty of a misdemeanor . . . ''

Petitioner contends that this provision of the statute violates article I, section 11, of the constitution of California; also article I, section 21 thereof; and also the fourteenth amendment to the constitution of the United States, in that it provides that a criminal penalty shall attach to any person, company, association, or corporation who shall exact more than twelve per cent per annum upon a sum of money loaned and secured by any other class of security than corporation bonds, municipal or other public bonds, but as to the lender upon such last mentioned securities no criminal or other penalty attaches for what amounts to the same act. In other words, the contention of petitioner is that there is no economic, intrinsic, constitutional difference between loans secured by corporate bonds or municipal or other public bonds and loans secured by other forms of security or collateral.

Respondent, however, urges that the clause should not be construed to mean that a lender on corporate or other bonds is in any different class from a lender on other securities, but that it should be construed to mean that the corporate entities mentioned may negotiate and sell the bonds of their own issuance at any discount or rate of interest they may deem fit without incurring the penalty

of the law. In other words, respondent would have us hold that the clause referred to means "evidenced by" and not "secured by" corporation bonds, etc. To be more specific, his contention is that the phrase should be construed as though it read: "Except a loan by a borrower upon corporation bonds, municipal bonds and other public bonds."

A careful research of the authorities and the statutes of the various states on usury convinces us that the draftsman of this measure had before him almost exclusively in his work the Wisconsin Usury Act (Wis. Stats. 1917, p. 1346), for we find section 1 of our Usury Act to be almost a perfect reproduction of section 1688 of the Wisconsin statute; also section 2 of our statute is practically a duplicate of section 1689 of the Wisconsin law. Indeed, the first paragraph of section 3 of our law finds its duplicate in the first paragraph of section 1691 of the Wisconsin law and undoubtedly paragraph 3 of said section 1691 of the Wisconsin law was the inspiration of the draftsman when he produced the provision now under consideration. The Wisconsin law in this behalf provides as follows:

"Sec. 1691, par. 3: And when the payment of the money loaned shall be secured, or purport to be secured, or claimed by the payee of said loan to be secured, by chattel mortgage, bill of sale, pledge, receipt or other evidence of debt upon chattel goods or property, or by assignment of wages, or by power of attorney to execute any such instrument on behalf of the borrower, whether any such instrument or the power given to execute the same, shall be valid or not, or whether any such instrument or power shall be fully executed or executed partly in blank, any person who, as principal or as agent for another, shall ask, demand, or receive, take, accept or charge, in addition to the interest aforesaid, more than an amount equal to seven per centum per annum of the original sum actually loaned for the time of such loan, on sums of a hundred dollars or less, nor more than four per cent per annum of the original sum actually loaned for time of such loan, on sums over one hundred dollars, disregarding part payments and the dates thereof, but not to be computed for a period exceeding one year in any event, in full for all examinations, views, fees, appraisals, commissions, re-

newals and charges of any kind or description whatsoever in the procuring, making and transacting of the business connected with such loan, shall be guilty of a misdemeanor. . . . "

A consideration of this provision shows that it refers to personal property loans and allows the lender on personal property not only the rate of interest provided with respect to other loans but also a further charge by way of commissions, examinations, fees, appraisals, renewals, etc. In other words, this provision of the statute was intended to control loans upon chattels and was not intended to make any distinction between secured and unsecured loans in any other respect. It is an appeal to the police power of the state for the regulation of pawnbrokers and other personal property brokers, a subject to which an appeal to the police power has been made in practically every state of the Union. Indeed, similar legislation is on the statute books in California and has been declared a proper subject for the operation of police power and, therefore, valid. (See *Eaker* v. *Bryant,* 24 Cal. App. 87 [140 Pac. 310]; *Levinson* v. *Boas,* 150 Cal. 185 [11 Ann. Cas. 661, 12 L. R. A. (N. S.) 575, 88 Pac. 825]; *Ex parte Lichenstein,* 67 Cal. 359 [56 Am. Rep. 713, 7 Pac. 728].)

It would appear, therefore, that the draftsman of the Usury Law statute of California undertook to broaden the provision respecting personal property loans so as to include secured obligations of all kinds on real and personal property except corporate bonds, municipal and other public bonds, without realizing that the preceding sections of the act fully covered secured loans. It should also be noted that the draftsman of our statute did not desire that the lender have any commission or other emolument that would enhance his interest charge and so create an independent provision respecting loan brokers which undertook also to limit their charges. This latter effort was held to have been invalid and abortive in *Wallace* v. *Zinman, ante,* p. 585 [254 Pac. 946]. So the language of this exception and the connection in which it is found convinces us that the draftsman of the Usury Law of California, after grappling with his many problems, lost himself and with drawn sword was stabbing at imaginary

enemies in the darkness when he inserted the clause now under consideration in the act.

[1] However this may be, we cannot escape the conclusion that by use of the phrase " . . . secured by mortgage . . . or other evidence of debt, except corporation bonds, and municipal and other public bonds . . . " is meant that no offense could be committed by a loan at any rate of interest, however large, upon such property as security. We find no difficulty in construing the preceding words, such as mortgage, trust deed, bill of sale, assignment, pledge, or receipt, to be in and of themselves evidence of debt in the broader sense of that term. We are mindful of the rules of construction which must bind us, which said rules are as follows:

"Absurd or unjust results will never be ascribed to the legislature and it will not be presumed to have used inconsistent provisions as to the same subject in the immediate context. The courts will be astute to avoid such results (*Wells Fargo & Co.* v. *Mayor etc. of Jersey City,* 207 Fed. 871). In the interpretation of statutes courts are not bound by grammatical rules, and may ascertain the meaning of words by the context. (*Cavender* v. *Hewitt,* 145 Tenn. 471 [22 A. L. R. 755, 239 S. W. 767].)

" 'The mere literal construction of a section in a statute ought not to prevail if it is opposed to the intention of the legislature apparent by the statute; and if the words are sufficiently flexible to admit of some other construction it is to be adopted to effectuate that intention. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. "While the intention of the legislature must be ascertained from the words used to express it, the manifest reason and the obvious purpose of the law should not be sacrificed to a literal interpretation of such words." Words or clauses may be enlarged or restricted to effectuate the intention or to harmonize them with other expressed provisions. Where general language construed in a broad sense would lead to absurdity it may be restrained. The particular inquiry is not what is the abstract force of the words or what they may comprehend, but in what sense they were intended to be used as they are found in the act.' (Lewis' Sutherland on Statutory Construction, 2d ed., sec. 376, p.

721.)'' (*In re Haines,* 195 Cal. 605, 613 [234 Pac. 883, 886].)

But notwithstanding the liberality and flexibility of these rules, we are unable to put any different construction on this clause than the plain meaning afforded by the ordinary import of the words. To give the construction contended for by respondent, it is necessary for the borrower to make a loan to the lender and thus to twist the words out of joint to such length that the borrower while going on must meet himself coming back. We do not feel able to indulge the verbal gymnastics necessary to make the meaning out of this phrase contended for by respondent and therefore conclude that petitioner has properly construed its meaning. [2] It is conceded that no intrinsic, economic, constitutional, or other reason exists for a discrimination between loans on ordinary security and loans upon corporate, municipal, or other public bonds, and the provision must, therefore, be adjudged void as being in contravention of the above specified plain mandates of the constitution.

[3] But, notwithstanding our views to the effect that the provision is discriminatory and void, we nevertheless would reach the same result for all practical purposes, if we adopted the construction contended for by respondent. In other words that sections 1 and 2 of the act are intended to cover secured as well as unsecured loans. The clauses are all-comprehensive in their meaning and no reason whatsoever exists for making a special provision respecting unsecured loans; therefore, if the clause in question were given the full meaning contended for by respondent, it would be at most nothing more than surplusage, for it would have been previously covered by the provisions of sections 1 and 2. [4] This provision would in that case be surplusage because the sale at a discount by corporate borrowers, such as corporations, municipal, and other public corporations, of bonds of their own issue, is not, in our opinion, a loan within the meaning of the Usury Law and was never intended to be subject to the operation of any of the provisions of this statute. The sale of certain classes of corporate bonds is controlled by what is known as the Corporate Securities Act, approved May 18, 1917, together with its amendatory and supple-

mentary provisions since that time (Deering's Gen. Laws 1923, part 1, p. 1407, Act 3814).

Municipal bonds and bonds of other public corporations are authorized by special provisions of the statute or constitution, are first voted by the people, residents of the territory included, and are then placed upon the market by competent boards of directors or trustees elected or appointed for the purpose. Indeed, in the operation of many city governments, they are, by reason of section 6 of article XI of the constitution, free from the operation of general laws at all. (*Civic Center* v. *Railroad Com.*, 175 Cal. 441 [166 Pac. 351]; *Morgan* v. *City of Los Angeles*, 182 Cal. 301, 305 [187 Pac. 1050].)

Then, too, we have section 23 of article XII of the constitution, conferring broad powers upon the Railroad Commission of the state of California, which amendment has been followed by a comprehensive statute known as the Public Utilities Act (Deering's Gen. Laws 1923, part 2, Act 6386, p. 2683), which act empowers the Railroad Commission to supervise the issuance, sale, and disposition of bonds of all public utilities. Likewise certain powers of a similar nature are conferred by what is known as the Bank Act of the state of California (Deering's Gen. Laws 1923, part 1, Act 652, p. 153.)

These, and perhaps many other statutes, are the result of the best wisdom of our state and involve some of its most important and most cherished functions and it is not for a moment to be held that this system of beneficent laws was to be set awry by a poorly drafted act meant only to protect the individual necessitous borrower from the rapacity of the more fortunate lender.

[5] A statute should be construed in the light of other existing legislation touching the same subject matter and statutes *in pari materia,* are to be construed together. (*McGrath* v. *Kaeline,* 66 Cal. App. 41, 44 [225 Pac. 34].)

[6] So construing them, we hold that it was not the intent of the act to repeal or modify or impair the integrity of any existing laws relating to the issuance, sale, or negotiation of securities now authorized or supervised by any such laws. This act provides for the express repeal of only sections 1917, 1918, 1919, and 1920 of the Civil Code, and the full operation of statutes respecting the control

of corporate securities, public or private, will not be deemed hampered in any way by the act in question. We are not here deciding what may be the effect of the act upon existing statutes regulating the business of pawn-brokers and other personal property brokers.

Many states, such as Illinois, Virginia, Wisconsin, New York, Maryland, Delaware, North Carolina, and South Carolina, have met the question by expressly denying to corporations the right to plead usury. But the weight of authority is that, independent of existing regulatory enactments, the sale and negotiation of bonds by corporations, public and private, are not loans within the meaning of the usury laws. 39 Cyc., page 936, states the rule as follows: "But by the weight of authority such bonds are regarded as having a valid existence and transferable quality in the hands of the issuing corporation and thus subject to sale at their market value, which may be at a discount much greater than legal interest, without making them subject to the taint of usury in the hands of an immediate purchaser." (See, also, *Griffith* v. *Burden*, 35 Iowa, 138, 143; *Kornegay* v. *City of Goldsboro*, 180 N. C. 441 [105 S. E. 187, 193], and cases there cited; *Memphis* v. *Bethel* (Tenn.), 17 S. W. 191; *Orchard* v. *School District*, 14 Neb. 378 [15 N. W. 730, 731]; *Armstrong* v. *Freeman*, 9 Neb. 11 [2 N. W. 353], *New River Lumber Co.* v. *Tennessee Ry. Co.*, 136 Tenn. 661 [191 S. W. 334, 340], and *White Water Valley Canal Co.* v. *Vallette et al.*, 21 How. (62 U. S.) 414, 425 [16 L. Ed. 154, see, also, Rose's U. S. Notes].)

Corporations, public and private, are, as .we have pointed out, protected and supervised by specific laws applicable alone to them and no reason exists for further regulation. On the contrary, such a law, if applied to them, would have a mistaken effect, for instead of helping them as the design of the usury law implies, the practical effect would be to discourage and hamper the free commerce among our people in this popular class of securities to the detriment of the public welfare. A loss of confidence in these securities would work a positive and widespread injury to our otherwise strong and healthy business fabric.

The inevitable conclusion from these views is that sections 1 and 2 of the act known as the Usury Law are, in all respects, valid and cover both secured and unsecured obligations, and that section 3 of said statute, taken in connection with the decision in *Wallace* v. *Zinman, ante,* p. 585 [254 Pac. 946], should be construed as though it read as follows:

"Sec. 3. Every person, company, association or corporation, who for any loan or forbearance of money, goods or things in action shall have paid or delivered any greater sum or value than is allowed to be received under the preceding sections, one and two, may either in person or his or its personal representative, recover in an action at law against the person, company, association or corporation who shall have taken or received the same, or his or its personal representative, treble the amount of the money so paid or value delivered in violation of said sections, providing such action shall be brought within one year after such payment or delivery. And any person, company, association or corporation who shall violate the provisions of sections one and two of this act shall be guilty of a misdemeanor and upon conviction thereof shall be punished for the first offense by a fine of not less than twenty-five dollars nor more than three hundred dollars, or by imprisonment not more than six months, or by both such fine and imprisonment, and for each subsequent offense and conviction shall be punished by a fine not less than one hundred dollars nor more than five hundred dollars and by imprisonment not less than six months nor more than one year.. The penalties herein provided for the violation of this section and said sections one and two shall apply to and be imposed upon each member of any unincorporated company, association, or of any copartnership and upon each officer and director of a corporation who shall violate either of said sections."

[7] A loan, therefore, upon corporate bonds as security in excess of the legal rate would be just as usurious as a loan on any other class of security.

The above conclusion disposes of the contention of *amici curiae* that violence would be done to the legislative intent by striking down the provisions of the second portion of section 3, involved herein, and leaving in operation

sections 1 and 2 and the remaining paragraphs of section 3 of said act. The provision is either void or surplusage and, being clearly severable, no violence has been done the legislative intent.

It follows that with this exception the statute as a whole is valid and free from constitutional objection and that specific objections to all provisions thereof affecting petitioner are without merit. The petitioner being charged with a violation of valid provisions of said act, his conviction and imprisonment were proper.

Writ discharged and petitioner remanded to custody.

Shenk, J., Curtis, J., Richards, J., Seawell, J., Waste, C. J., and Langdon J., concurred.

In denying a rehearing on March 31, 1927, the court filed the following opinion:

THE COURT.—The petition for a rehearing herein is denied.

[8] There is no practice here allowing petitions for rehearing in case of *habeas corpus*. (*Ex parte Robinson,* 71 Cal. 608–611 [12 Pac. 794]; *In re Travers,* 48 Cal. App. 764, 771 [192 Pac. 454].)