[No. 40051.    En Banc.    December 24, 1970.]

SPARKMAN & MCLEAN CO., *Respondent,* v. GOVAN INVEST-
MENT TRUST, *Appellant.**

*Reported in 478 P.2d 232.

*Dawson & Borst,* by *Edward A. Dawson* and *Howe, Davis, Riese & Jones,* by *Daniel B. Ritter,* for appellant.

*E. R. Cluck* and *Orvin H. Messegee,* for respondent.

*Monheimer, Schermer, Van Fredenberg & Smith,* by *J. Dimmitt Smith,* amicus curiae.

HUNTER, C. J.—The plaintiff (respondent) Sparkman & McLean Co., upon motion to this court seeks to dismiss an appeal taken by the defendant (appellant) Govan Investment Trust, from a decree foreclosing a $400,000 real estate mortgage held by the plaintiff to secure the defendant's loan. The trial court held the transaction nonusurious and granted summary judgment to the plaintiff. The defendant's motion for summary judgment was denied.

The defendant in this case, pleading the defense of usury, seeks affirmative relief against the plaintiff. The plaintiff contends the case is now moot by reason of the enactment of chapter 97 by the state legislature during its 1970 extraordinary session. Chapter 23, Laws of 1967, Ex. Ses., was amended by the addition of chapter 142, Laws of 1969, Ex. Ses. This addition is codified as RCW 19.52.080. The legislature further amended this statute by enacting chapter 97, section 2, Laws of 1970, Ex. Ses. The statute now reads:

> Corporations, Massachusetts trusts, associations, limited partnerships, and persons engaged in the business of lending money or the development or improvement of real estate in the state of Washington may not plead the defense of usury nor maintain any action thereon: *Provided, however,* That this section shall apply only to a transaction which involves an amount in excess of one hundred thousand dollars. [1970 1st ex.s. c 97 § 2; 1969 ex.s. c 142 § 1.]

This statute became effective May 14, 1970.

There is no dispute as to whether the defendant came within the definition of the statute. The question posed is whether the defendant is now pleading the defense of usury or maintaining an action thereon.

The record shows that both parties moved for a summary judgment; the plaintiff for the foreclosure of his mortgage,

the defendant upon his affirmative defense in seeking to impose upon the plaintiff the penalties provided in our usury statute. The plaintiff having prevailed, this appeal followed.

The defendant contends under this posture of the case he is not presently pleading the defense of usury or maintaining an action thereon; that this occurred at the trial of the case prior to the enactment of the statute.

■ The rule is clear in this state that one who is prosecuting an appeal is maintaining an action. In *Foley v. Pierce County School Dist. 10,* 102 Wash. 50, 172 P. 819 (1918), we said: "To prosecute an appeal is to maintain an action." This holding was reaffirmed in *Bush v. Quinault School Dist. 97,* 1 Wn.2d 28, 32, 95 P.2d 33 (1939). Conversely, a person who is defending a judgment from which an appeal has been taken is not maintaining an action. In *Bruenn v. North Yakima School Dist. 7,* 101 Wash. 374, 380, 381, 172 P. 569 (1918), we stated:

> But it is argued that, since the action was pending on appeal subsequent to the time when the statute took effect, the word "maintained" is applicable. This contention does not seem to us sound. When a person obtains a final judgment in the superior court, he has nothing further to do. He has obtained his judgment and is out of court. True, when the appeal is taken, notice must be given him, but this notice is not process and he is not required to appear in the appellate court. If he does not, no default can be taken against him. . . . If to defend an action in the superior court, where, if no appearance has been made, a default may be taken, is not maintaining an action within the meaning of the statute, it would seem reasonably to follow that respondent, in this court, by appearing and resisting assignments of error, is not maintaining an action.

Here the defendant did not prevail in the lower court in the prosecution of its affirmative defense of usury, and is now maintaining an action by the prosecution of its appeal.

■ The defendant argues, however, that its rights were vested prior to the enactment of the repealing statute, *supra,* which the statute cannot abrogate. To the contrary, the rights of the defendant were not vested.

In *Hansen v. West Coast Wholesale Drug Co.,* 47 Wn.2d 825, 827, 289 P.2d 718 (1955), where the right to prosecute an action in tort, by virtue of a statute, had been repealed pending an appeal, we said: "This being an action sounding in tort, appellant had no *vested right* until a final judgment in her favor had been entered." In *Hafer v. Spaeth,* 22 Wn.2d 378, 382, 156 P.2d 408 (1945), we said: "Usury is of purely statutory creation, and in the absence of statutory restriction parties may ordinarily contract for any interest they see fit." A vested right does not arise merely by a statutory creation. In *Hansen v. West Coast Wholesale Drug Co., supra,* quoting from *Robinson v. McHugh,* 158 Wash. 157, 164, 291 P. 330 (1930), we stated: " 'Where a tort action can be *brought only by virtue of a statute,* there can be no vested right therein, and the legislature may take away the right at any time.' "

The Supreme Court of Nebraska in *White Motor Co. v. Reynolds,* 179 Neb. 91, 94, 136 N.W.2d 437 (1965), has correctly stated the law in regard to vested rights under a usury statute, as follows: "There is no vested right in a usury law and it may be repealed or changed so as to affect causes of action or defenses in pending suits."

We are satisfied the defendant comes within the ambit of the statute, *supra.* The case is therefore moot unless it be determined that the statute is unconstitutional, which question we will now consider.

It is contended that the classification set forth in RCW 19.52.080 offends the equal privileges and immunities provisions of article 1, section 12 of the state constitution and the equal protection clause of the fourteenth amendment to the Constitution of the United States.

With the enactment of this statute, the legislature has established two categories that are not to be governed by the usury statute. The statute exempts those parties in the business of "lending money" or in the business of "development or improvement of real estate" in this state where the transactions involved are in excess of one hundred thousand dollars. The designated class includes corporations,

Massachusetts trusts, associations, limited partnerships, and persons.

■ It is the well-established rule of law in this state that a statutory classification having some reasonable basis does not offend the equal protection clause or the privileges and immunities clause. *O'Connell v. Conte,* 76 Wn.2d 280, 283, 456 P.2d 317 (1969); *Boeing Co. v. State,* 74 Wn.2d 82, 86, 442 P.2d 970 (1968); *State v. Persinger,* 62 Wn.2d 362, 382 P.2d 497 (1963). In order to successfully attack a particular classification, it must be shown that such classification is manifestly arbitrary, unreasonable, inequitable, and unjust. *Treffry v. Taylor,* 67 Wn.2d 487, 408 P.2d 269 (1965); *Kelleher v. Minshull,* 11 Wn.2d 380, 119 P.2d 302 (1941).

Accordingly, the question is not whether the statute is discriminatory in nature, nor is it of paramount concern if the classification results in some inequality. The crucial determination is whether there are reasonable and justifiable grounds giving rise to the classification. *State v. Persinger, supra; State v. Kitsap County Bank,* 10 Wn.2d 520, 117 P.2d 228 (1941). Finally, in making this determination, it is recognized that the legislature has a wide range of discretion in defining the classifications and that such enactments are presumptively valid. *O'Connell v. Conte, supra.*

■ In discussing what constitutes a reasonable basis for the classifications and exemptions, the purpose behind the distinction must be examined. Generally, most states have enacted usury statutes to protect the needy borrower from the unconscionable moneylender. Our state is no exception. It is the declared public policy of this state to protect citizens from the oppressive exactions of interest. Laws of 1967, Ex. Ses., ch. 23, § 2, p. 1509. In *Baske v. Russell,* 67 Wn.2d 268, 273, 407 P.2d 434 (1965), this court had occasion to generally discuss the purpose of our usury statute:

> The defendant in this case was in need of money. He was never told what interest he was to pay; he thought he was to pay the legal rate. . . . Finding himself in an economic squeeze, he did what man has done throughout history—accepted the oppressive terms of usurious

interest. This is an evil that the usury statute attempts to prevent. It is designed to protect those who by adversity and necessity of economic life are driven to borrow money at any cost. The protection granted is based on the fact that many borrowers are powerless to resist the avarice of the money lenders.

With this purpose in mind, the legislature undoubtedly felt that certain parties need not be afforded the protection of our usury statute. Nor should they be restricted by the provisions of this statute. It is reasonable to assume that those parties engaged in the business of lending money should be sufficiently accustomed to financial operations as not to require the protection of the statute. It is equally reasonable to assume that those engaged in the development and improvement of real estate, expecting high risks and high returns, should be familiar with financial operations and money's worth. Defining the class to include transactions in excess of one hundred thousand dollars is a further reasonable distinction between the "small time" borrower or lender and the "big time" operator.

In *Griffith v. Connecticut*, 218 U.S. 563, 570, 54 L. Ed. 1151, 31 S. Ct. 132 (1910), the United States Supreme Court considered the reasonableness of a Connecticut usury statute that limited interest on loans to 15 per cent and specifically exempted national and state banks, trust companies, and bona fide mortgages on real and personal property. While holding this was a reasonable classification, the court said:

> Such institutions, managed by those accustomed to financial operations and familiar with the worth of money in the market from day to day, might well be deemed to require no statutory protection against being forced by their financial necessities to pay excessive interest for moneys borrowed.

Applying the aforementioned rules, we find that the challenged classification is not arbitrary and rests upon a reasonable basis.

█ It is further argued, however, that the legislation is discriminatory because it omits general partnerships and

trusts (other than Massachusetts trusts), and therefore does not apply alike to all persons within the designated class. This argument is without merit. General partnerships and trusts (other than Massachusetts trusts) are not legal entities. The word "persons" added to the statute by the 1970 amendment, together with the word "corporations" brings members of a general partnership or a trustee into the classification.

■ We held that chapter 97, section 2, Laws of 1970, Ex. Ses., is not in violation of the equal privileges and immunities provisions of article 1, section 12 of the state constitution or the equal protection clause of the fourteenth amendment to the Constitution of the United States.

Other contentions that RCW 19.52.080 is not constitutional are without merit. Having held that the statute is constitutionally valid, and having heretofore determined that the defendant comes within the ambit of the statute, the case is moot. Plaintiff's motion to dismiss defendant's appeal is therefore granted.

FINLEY, ROSELLINI, HAMILTON, NEILL, STAFFORD, and SHARP, JJ., and RYAN, J. Pro Tem., concur.

HALE, J. (dissenting)—Usury is a bad business universally condemned in law and morals. Any statute which purports to permit it in the face of an avowed declared and unretracted public policy is suspect and should be minutely examined.

The statute upon which the court moots this action invidiously, I think, purports to permit usury in loans over $100,000 made to particular kinds of legal entities engaged in the particular business of lending money or developing or improving real estate located in the state. In my judgment, the enactment fails to pass the equal protection and special privilege and immunity tests of the constitutions, is therefore void, and renders nothing moot. Accordingly, I dissent.

Defendants Govan Investment Trust and Goedeckes executed a $400,000 note and mortgage August 24, 1965. Plaintiff Sparkman & McLean Company brought this suit to

collect the note and to foreclose the mortgage. Defendants raised the issue of usury in partial defense to the relief demanded, claiming that if certain fees and broker's charges were included the 7 per cent note and mortgage became usurious. Whether this defense has merit is of little consequence at this juncture, for the court dismisses the appeal on the basis that usury may no longer be interposed as a defense by some—but not all—legal entities in loans exceeding $100,000.

The current statute became effective May 14, 1970 (Laws of 1970, Ex. Ses., ch. 97, p. 760), amending Laws of 1969, Ex. Ses., ch. 142, p. 1039—an addition to Laws of 1967, Ex. Ses., ch. 23, p. 1509. Containing no declaration of principles nor altering the declared public policy of this state concerning usury, except those inferable from the enactment itself, the section in its entirety reads:

> Sec. 2. Section 1, chapter 142, Laws of 1969, 1st ex. sess., and RCW 19.52.080 are each amended to read as follows:
>
> Corporations, Massachusetts trusts, associations, limited partnerships, and persons engaged in the business of lending money or the development or improvement of real estate in the state of Washington may not plead the defense of usury nor maintain any action thereon: PROVIDED, HOWEVER, That this section shall apply only to a transaction which involves an amount in excess of one hundred thousand dollars.

The boon thus conferred is limited to (1) corporations, (2) Massachusetts trusts, (3) associations, (4) limited partnerships, and (5) persons,[1] which must be (6) engaged in

---

[1]Individuals were not included in the first enactment, the term "persons" being added as a category by amendment. The effective dates of the act and amendment leapfrogged the dates of the trial and argument, according to the following chronology:

Trial ............................................ August 16, 1967
Appeal argued on merits ........................... March 19, 1969
Effective date of laws, 1969 session ................ August 11, 1969
Motion to dismiss appeal on mootness ........... November 7, 1969
Effective date of amendment adding
    persons to exempt category ...................... May 14, 1970
Reargument on appeal and motion ................. October 6, 1970

the business of lending money or (7) development or improvement of real estate (8) in the state of Washington. Individuals, not included until later amendment, and ordinary copartnerships, trusts (other than the Massachusetts variety), and other entities normally sui juris were thus excluded from the original 1969 enactment. The legislature has little difficulty in making its classifications all-inclusive and applicable to all legal or business entities. For example, in RCW 31.08.010, the Small Loan Act, authorizing personal loans at greater than 12 per cent interest, the term "Person" includes "individuals, copartnerships, associations, trusts, corporations, and all other legal entities." Adding individuals in the 1970 amendment herein considered did not, I think, cure the unconstitutionality for some business entities are still excluded, and none of the designated entities are included if they are not generally engaged in lending money, or developing or improving real estate within this state.

The statute should be read in pari materia with the state's avowed public policy against usury. When added to Laws of 1967, Ex. Ses., ch. 23, p. 1509, the new section leaves intact the declared persisting and broad public policy of this state as partly restated in Laws of 1967, Ex. Ses., ch. 23, § 2, p. 1509, that the usury laws

> are enacted in order to protect the residents of this state from debts bearing burdensome interest rates; and in order to better effect the policy of this state to use this state's policies and courts to govern the affairs of our residents and the state; and in recognition of the duty to protect our citizens from oppression generally.

RCW 19.52.005. Nor does it change the state's policy against usury as explicitly set forth further in an addition to RCW 19.52 (Laws of 1967, Ex. Ses., ch. 23, § 7, p. 1512), specifically denouncing usury in the following language:

> Entering into or transacting a usurious contract is hereby declared to be an unfair act or practice in the conduct of commerce for the purpose of the application of the consumer protection act found in chapter 19.86 RCW.

The statute under consideration confers special privileges and immunities upon some legal entities (Laws of 1970, Ex. Ses., ch. 97, § 2, p. 760), and at the same time denies those privileges and immunities to all others. It thus deprives other borrowers and lenders of equal protection of the laws, contrary to the fourteenth amendment to the United States Constitution and Const. art. 1, § 12. RCW 19.52 still prohibits usury and fixes 12 per cent as the maximum annual rate of interest permissible except in the highly regulated and licensed lending businesses authorized by the state to do business under the Small Loan Act. *See* Small Loan Act, RCW 31.08. Therefore, except for the state regulated small loan business and the specially privileged entities covered by the instant statute, 12 per cent remains the maximum lawful rate, and 6 per cent the legal rate.

Statutes allowing differing rates of interest among different classes of lenders and borrowers and affecting different kinds of transactions are, as a general proposition, sustained if they rest on reasonable classifications and apply uniformly within each reasonably established class—but only if there exists a rational connection between the classification and the purposes of the legislation. *Mutual Loan Co. v. Martell,* 222 U.S. 225, 56 L. Ed. 175, 32 S. Ct. 74 (1911); 45 Am. Jur. 2d *Interest and Usury* § 6 (1969). Accordingly, statutes depriving corporations of the right to interpose the defense of usury will be constitutionally sustained when the classifications of lenders, borrowers and transactions are reasonably designed to attain a desired legislative purpose or to avoid a social evil and apply uniformly to all within the respectively defined classes. *See Usury, Defense by Corporation,* Annot., 63 A.L.R.2d 929 (1959).

I agree that if a rational connection exists between a statutory classification and the results to be attained, the statute will not ordinarily be deemed in violation of the equal protection and privileges and immunities clauses— but I can find here no such rational connection. For example, the statute includes *limited partnerships,* certainly a

unique category, but under the rule of inclusio unius est exclusio alterius, would exclude general partnerships, another unique category. Thus, the general usury laws restricting interest to 12 per cent per annum to a general copartnership for whatever purpose will not, under this statute, apply to limited partnerships as defined and recognized in RCW 25.08. If a general partnership borrows money, all partners are liable; if a limited partnership does the same thing, the liability of the limited partners will be limited to the extent of their contribution, but the general partner or partners in the combination remain responsible for the entire debt. RCW 25.08.070, 25.08.170; *Rathke v. Griffith,* 36 Wn.2d 394, 218 P.2d 757, 18 A.L.R.2d 1349 (1950). I see no rational connection whatever between allowing a limited partnership to obtain a large loan by means of waiving the usury laws and denying this same privilege and immunity to general partnerships. In explicitly including limited partnerships, the statute thereby ipso facto excludes general partnerships and those distinctions thought to exist between the two under the entity or nonentity theories of partnership remain esoteric, academic and inapplicable in deciding the constitutionality of this statute.

At this juncture, I think the classification with respect to classes of borrowers and lenders included in the statute is neither reasonable nor efficacious to achieve a discernible objective; and bears no reasonable relationship to the accomplishment of an apparent legislative purpose nor to curtail a recognizable social evil. The statute does nothing more than confer special privileges and immunities upon some borrowers and lenders, while ipso facto denying these privileges and immunities to others very similarly circumstanced and with no apparent legally cognizable reasons for the discrimination. One can speculate endlessly without reaching a sensible conclusion as to why the particularly described legal entities, engaged in the particularly described businesses, may bindingly agree to waive the usury defense in loans over $100,000, and why these same privileges and immunities are denied to others who are not

generally engaged in lending money but may in a particular instance wish to lend or borrow money.

Here the enactment with respect to the kinds of businesses covered by it suffers an even more obvious constitutional breakdown. The legislature did not in any way set forth its reasons for restricting the operation of the statute to entities engaged in the business of lending money, which would include banks, loan associations, individuals, and even nefarious loan sharks, or to the described entities engaged in developing or improving real estate within this state. The majority assumes not only that real estate loans are riskier, for example, than loans on bonds, stock, hardware, groceries, machinery, etc., but assumes further that the legislature made the same assumption. I would reach an opposite conclusion on the theory that under all lies the land and that loans upon it are about as stable and risk-free as any investments. But all of this is no more than errant speculation one way or another, and the constitutionality of a statute cannot and ought not be made to depend, one way or the other, upon such conjectures.

Whatever legislative purpose was intended, aside from conferring such special privileges and immunities upon some and denying them to others, cannot be ascertained from reading the statute. In limiting its application to only particular kinds of legal entities in the particular business of lending money or developing or improving real estate located only within this state, the statute, therefore, is manifestly arbitrary, capricious and discriminatory and as such should be held unconstitutional and invalid.

On an earlier occasion, this court faced the constitutional impasse with respect to usury laws in a statute favoring one class over another. In 1937, the legislature enacted a measure regulating and licensing small loan businesses which allowed greater than 12 per cent interest to licensed lenders but made it a gross misdemeanor to charge more than 12 per cent interest except under the statutory regulatory scheme. Laws of 1937, ch. 213, p. 1034. The Governor vetoed section 3 of the act which required the Director of Licensing to investigate all applications for licenses, re-

quired a bond for operating a small loan business, and directed that certain reports be furnished by the licensee annually. Passing on the constitutionality of that statute as partially vetoed, we held it to be unconstitutional as a piece of discriminatory legislation in *Acme Fin. Co. v. Huse*, 192 Wash. 96, 73 P.2d 341, 114 A.L.R. 1345 (1937). In holding the statute repugnant to the constitution, we said, at page 114:

> We have left after the veto nothing more than a statute making it a crime for certain persons to charge more than twelve per cent interest on loans under three hundred dollars and which forfeits the loan if the statute be disobeyed.
>
> It seems to us that a mere statement of the matter is all that is required to show that the act, or, more accurately speaking, what remains of it, is unlawfully discriminatory. The excepted classes are so numerous and varied and cover such a broad field that the act, in fact, does not have the semblance of a general law, but of a special one aimed at a special and limited class. It clearly denies to that class the equal protection of the laws, within the meaning of the fourteenth amendment to the Federal constitution, because, among other things, it permits the classes excepted by § 14, p. 1038, the right to collect service and carrying charges, etc., over and above the lawful twelve per cent interest rate, and provides a criminal penalty for all others who do so. *By the same token, it grants to the excepted classes special privileges and immunities in violation of Art. I, § 12 of the state constitution.*

(Italics mine.) And, at page 115:

> The injury done by a usurious loan is the same when the loan is made by a bank or trust company or a licensed pawnbroker as when made by anyone else.

Later, the small loan statute was reenacted, Laws of 1941, ch. 208, p. 609, allowing interest in excess of 12 per cent on loans of less than $500. This statute we upheld in *Kelleher v. Minshull*, 11 Wn.2d 380, 119 P.2d 302 (1941), largely on the basis that it set up a system of state supervision and licensing of small loan companies which, in the exercise of the police power, amounted to a reasonable and

fair classification of lenders, and quoted from *Cavanaugh v. People*, 61 Colo. 292, 157 P. 200 (1916), at 230, in support of the idea. Both *Kelleher* and *Cavanaugh* are thus authority for the principle that, when certain classes of lenders are compelled under the police power to comply with a state regulatory scheme of licensing, inspection and reporting, the permission to exact from the borrower a greater rate of interest than is allowed outside the regulated business was not an unconstitutional discrimination against unregulated lenders and did not deprive them of equal protection of the laws nor make them victims of unconstitutional statutory discrimination. Apparently it is the intensive regulation and licensing by the state which constitutes the constitutional equalizer.

The instant statute, however, sets up no regulatory or licensing scheme. It contains no provision from which the preferred classification of lenders and borrowers can be said to have been devised with reference to a known social evil; nor does it possess any provision reasonably designed to accomplish any such socially desirable end. On its face, the statute shows no reason in constitutional law why some kinds of legal entities should be preferred over other kinds or why certain kinds of borrowers should be favored over others in loans to certain kinds of borrowers. Whatever public good is to be engendered by it or evil suppressed by it remains undisclosed. Why, for example, should some legal entities engaged in lending money or developing or improving real estate be preferred in law over those selling farm machinery, trucks, canning equipment or wholesale groceries, or whatever? Or, why should usury be allowed on loans for the improvement of real estate within the state but be excluded if the money is to be used outside the state?

Only those "engaged in the business of lending money or the development or improvement of real estate in the state of Washington" are afforded the special privilege of borrowing at usurious rates. Citizens of this state who borrow here for land development or improvement outside the state are excluded. Thus, a bank which loaned money in

Washington for development of real estate in Oregon could not charge usury, but if the real estate were here the sky would be the limit.

The statute does not specify that the loan be for a particular purpose, nor specify that the loan be for actual real-estate development, but simply that the privileged entities be engaged in the business of lending money or developing or improving real estate. Thus, the specially privileged legal entities, if engaged in lending money in this state or developing or improving real estate in this state, can borrow money at usurious rates of interest apparently for any purpose that other legal entities not included among the privileged classification or engaged in other kinds of business cannot do.

A schematic picture showing possible operation of this statute makes its discriminatory features clear. Suppose, for example, 10 individuals wish to borrow $20,000 each for the construction of their respective homes; at the same time a corporation or Massachusetts investment trust engaged in the business of lending money or developing or improving real estate also wishes to borrow $200,000; and, thirdly, a farm machinery distributor wishes to borrow $200,000. They all approach a bank seeking such loans. If money is scarce generally, the bank in all probability would deny the loan to the individuals, and to the farm machinery company, but grant it to the corporation or Massachusetts trust for the persuasive reason that it would get no more than 12 per cent interest from the first two borrowers, but could legally demand and get 15, 18 or 30 or whatever per cent existing economic pressures would produce from the corporation or Massachusetts investment trust. Should money remain scarce, the Massachusetts trust could and probably would agree to build the 10 houses, but at an inflated price in order to recoup for the exorbitant interest rates it would have to pay.

But what about the third prospective borrower, the farm machinery company seeking a $200,000 loan to finance a sizeable sale of farm machinery? Unless the bank was glutted with uncommitted funds, it would not make the loan.

Because a farm machinery company is neither in the business of lending money nor improving nor developing real estate within the state, it could not as a borrower waive the defense of usury under the statute and make a binding enforceable promise to pay more than 12 per cent. The statute thus creates an unfair and discriminatory system of classification as to the borrowers and types of loans on no reasonably discernible basis in violation of the equal protection and special privilege and immunity provision of the fourteenth amendment to the United States Constitution.

In *Ex parte Sohncke,* 148 Cal. 262, 82 P. 956 (1905), where the statute under examination provided that individuals lending money on certain kinds of chattels could charge no more than 18 per cent interest but did not apply to other kinds of chattels, it was held that the statute violated the equal privileges and immunities section of the California constitution, and denied equal protection of the laws under the fourteenth amendment to the United States Constitution.

The court said, at page 267:

Upon this subject the supreme court of the United States has said that the state, "in prescribing regulations for the conduct of trade, cannot divide those engaged in trade into classes and make criminals of one class if they do certain forbidden things, while allowing another and favored class, engaged in the same domestic trade, to do the same things with impunity," and that it cannot discriminate "by declaring that particular classes within its jurisdiction shall be exempt from the operation of a general statute making it criminal to do certain things connected with domestic trade or commerce. Such a statute is not a legitimate exercise of the power of classification, rests upon no reasonable basis, is purely arbitrary, and plainly denies the equal protection of the laws to those against whom it discriminates."

Similarly, years later that same court applied the same rationale to another usury statute, and declared unconstitutional a law which purported to make it a misdemeanor to charge more than 12 per cent on loans secured by a mortgage, trust deed, bill of sale, and so on, but which exempted

corporate, municipal and other kinds of bonds secured by real or personal property. *In re Washer,* 200 Cal. 598, 254 P. 951 (1927). Holding this statute unconstitutional and void in some respects but valid in others, the court said, referring to the Fourteenth Amendment, at page 605:

> It is conceded that no intrinsic, economic, constitutional, or other reason exists for a discrimination between loans on ordinary security and loans upon corporate, municipal, or other public bonds, and the provision must, therefore, be adjudged void as being in contravention of the above specified plain mandates of the constitution.

The same reasoning was applied to a statute which allowed brokers' commissions of up to 5 per cent on loans not exceeding $1,000, and 3 per cent on loans of greater amounts if the loans were secured but which had no limitation as to the charges or fees on unsecured loans. Holding the statute unconstitutional and void, the California court said in *Wallace v. Zinman,* 200 Cal. 585, 254 P. 946, 62 A.L.R. 1341 (1927), at 597:

> There is no essential difference between a broker engaged in negotiating secured loans and one engaged in negotiating unsecured loans and certainly no essential difference between a broker engaged in negotiating loans on real property and one negotiating loans on other classes of security. It may also well be contended that said provision discriminates without intrinsic or constitutional distinction between contenders in other departments of the brokerage business. These discriminations are so plain that it requires but their statement to demonstrate that said provision is in violation of both sections 11 and 21 of article I of the constitution of California, and also the fourteenth amendment to the constitution of the United States.

A classification to be consistent with the equal protection clause must be based on a real and substantial difference having reasonable relation to the subject of the legislation. *Power Mfg. Co. v. Saunders,* 274 U.S. 490, 71 L. Ed. 1165, 47 S. Ct. 678 (1927). The statute is arbitrary and capricious in its classification of those who come under it and those who are excluded from it, and, in the absence of an equalizing regulatory scheme, unconstitutional on its face.

I would conclude, therefore, that, being unconstitutional, the enactment is void and without effect and does not, therefore, render the present appeal moot. I would hear the appeal on its merits.

February 11, 1971. Petition for rehearing denied.

