[No. 24793. Department Two. March 9, 1934.]

NORWEGIAN LUTHERAN CHURCH OF AMERICA, *Respondent*, v. MELVIN S. WOOSTER, *as County Assessor for King County, et al., Appellants.*[1]

*Robert M. Burgunder* and *Arthur M. Hare,* for appellants.

*Geo. Olson, W. H. Cook,* and *Emerson A. Cross,* for respondent.

[1]Reported in 30 P. (2d) 381.

582

Tolman, J.—Respondent, a corporation organized for religious purposes, brought this action to enjoin the collection of taxes levied upon real estate owned by it in the city of Seattle, King county. A trial on the merits resulted in findings of fact favorable to the plaintiff, and a decree adjudging the taxes to be illegal, null and void, and enjoining the defendants, as public officers, from collecting, or attempting to collect, the same. The defendants have appealed from that judgment, and while apparently not now questioning the facts as found, they, by their assignments of error, present to this court certain questions of law.

As a basis for the discussion and determination of those questions, the following facts found by the trial court must be kept clearly in mind:

"That for more than fifteen years last past the plaintiff has been and now is a corporation duly organized, existing and acting as a religious body under and by virtue of the laws of the state of Minnesota, and duly qualified to prosecute its religious work in the state of Washington.

"That the primary purpose of its organization and existence was and is accurately stated in its resolutions of incorporation in the following words: 'Its purposes and powers shall be to provide for the education of ministers for congregations, teachers for Christian instruction of children and youth, missionaries for mission work, deaconesses and others for charity work, and to that end establish, maintain and conduct seminaries, colleges, academies, schools, hospitals and other benevolent institutions; to establish, maintain and conduct home and foreign missions; to establish, maintain and conduct homes for orphans and dependent children and the aged, and to procure homes with others and the adoption by others of such children, and to act as guardians for such children; to provide for the support of superannuated ministers, professors and other functionaries of said church, their widows and children; to promote the use and

diffusion of Holy Scripture, Lutheran school books, hymn books, other devotional books, periodicals and papers by dealing therein and by printing and publishing the same; to take by gift, purchase or otherwise and hold all such real and personal property as may be used for the foregoing and other religious, educational and charitable purposes and to lease, mortgage, sell and otherwise dispose of the same when it is deemed expedient; to establish, maintain and manage endowment and other funds for the aforesaid and other religious, educational and charitable purposes, and to transact all other secular business and manage all other temporal affairs of said church.'

"That on or about the 24th day of September, 1925, the plaintiff acquired, and ever since said date has been and now is the owner of, the following described real property located in King county, state of Washington, to wit: Lot 1 of Block 5, of Boren and Denny's Addition to the city of Seattle; that said property is located on the southeast corner of the intersection of First avenue with Columbia street in said city and has a frontage of 60 feet on said First avenue and 111 feet on said Columbia street.

"That said property at all times material to this action has been and now is improved with a single structure, to wit: a four story building covering the entire lot. That said building is subdivided in various units, to wit: underneath the structure is a basement consisting of a single room and occupying space equal to the entire lot and capable of seating an audience of 350 to 500 people. That the south 10 feet of said frontage on First avenue is devoted to a stairway, leading from First avenue down to said basement and furnishing an entrance thereto for those who desire to enter. That the 60 feet frontage on First avenue is subdivided into three storerooms of 20 feet each, except the south room, out of which is subtracted sufficient space for the stairway before mentioned. These storerooms extend to the rear the entire distance of the building to the alley. That the entire third and fourth stories and the front half of the second story, fronting on First avenue, is devoted to sleeping rooms, access to which is

furnished from Columbia street. That the rear half of the second story is devoted to a combination reading room, dining room, and general assembly room. That off this combination room is a kitchenette, and also a small chapel used for devotional exercises, approximately 11 x 26 feet in size.

"That the basement aforesaid is rented by the plaintiff to the Seattle Union Gospel Mission, a religious and humanitarian organization operated without profit, which holds nightly religious services at said place and is otherwise engaged in philanthropic and religious work of the same general character as that prosecuted by the plaintiff. That the rental value of said basement in ordinary times is $150 a month, but because of the character of the institution renting the same, and because of its work being so similar to that prosecuted by the plaintiff, the rental received from said Mission has been and is but $35 per month.

"That the three storerooms are rented to parties who prosecute therein a commercial business, and from the three tenants combined plaintiff derives a revenue of $225 per month.

"That the sleeping rooms aforesaid are devoted in the main to the accommodation of waterfront characters, such as seamen, longshoremen and the like, some of whom can and do pay therefor at times and some of whom cannot, but all of whom are served alike, and none of whom are turned away for the sole reason that they cannot pay for service, and from this operation plaintiff has never received a profit. That the reading room is thrown open without charge to all who care to enter. That in the reading room food is served to a certain extent, that is coffee, sandwiches, doughnuts and the like, and which food is served only to the needy and then without charge. That in the chapel daily religious services are held, open to all who care to enter, and for the accommodation of larger crowds the said reading room is devoted to religious services held at least twice a week and again on Sunday.

"That as a matter of statistics the following is true: That for the years 1931 and 1932 the plaintiff furnished a total of 35,176 free meals; and for the first four

months of 1933 it furnished a total of 11,415 free meals;

"That for the years 1931 and 1932 it furnished a total of 7,784 lodgings; and for the first four months of 1933 it furnished a total of 1,404 lodgings;

"That for the years 1931 and 1932 it held a total of 485 religious services; and for the first four months of 1933 it held a total of 89 such services.

"That the attendance at such services for the years 1931 and 1932 total 27,000; and for the first four months of 1933 such attendance has totaled 8,322;

"That the operating receipts for the year 1931 were $13,058.38; and for the year 1932, $10,785.53; and for the first four months of 1933 they were $3,821.95;

"That after the expenditures of such receipts, the operating deficit for 1931 was $11,425.84, for 1932 it was $11,997.42; and for the first four months of 1933 it was $3,339.79.

"That in its operations plaintiff has a constant deficit, and could not prosecute its work but for outside contributions. One such contribution has been received annually for some years past from the Seattle Community Fund. This contribution has been as high as $6,000 and for the present year it will be about $4,500. That notwithstanding this contribution and other public donations, the plaintiff monthly sends from its headquarters in Minnesota the sum of $350 to make up the balance of such deficit. That the work has never been prosecuted at a profit, and if at any time the receipts should exceed the expenditures the excess would be devoted to still greater activities in and about said premises of the same general character as now is prosecuted there.

"That ever since its organization the plaintiff has been nonsectarian in practice, and has conducted and is now conducting said property primarily and chiefly for religious purposes and for the general public good and not for profit, and during all the times material to this action has used property solely for carrying out the religious purposes of the plaintiff, and has devoted the same to the general public benefit.

"That in the religious work to which said premises have been devoted since its acquisition there has been no sectarian doctrine of the Lutheran Church, or any other denomination, preached or stressed; but to the contrary, the mission work of the plaintiff to which said premises have been devoted has been wholly and solely of a nonsectarian character; that it is a principle of the plaintiff at all times in the prosecution of its work in and about the said premises to permit or allow no one in its service, or any speaker in its devotional exercises, to preach or promote any sectarian doctrine, or principle, or creed; that those in authority for plaintiff have never allowed or permitted any secular or credal controversy to be presented at any of its meetings, either by any one in its service, or by any speaker, or by any person in attendance at its religious services, conferences, or meetings; that it has been the deliberate plan of the plaintiff in its religious work to make the premises in its religious and related work wholly and solely nonsectarian in its character to the end that said premises, including the portion used in the basement by the Union Gospel Mission shall be open alike to Jew and Gentile, Catholic and Protestant, thus enabling all the facilities of said premises to be devoted to the greatest general public benefit.

"That the religious purposes for which the premises involved in this action have been used by plaintiff during all times material to this action include not only nonsectarian religious purposes of said plaintiff, but said premises have also been used for the educational, benevolent, protective and social departments growing out of and related to the nonsectarian religious work of said plaintiff carried on in said premises.

"That the revenues derived from the stores and from the basement, during all the times material to this action have been used for the religious work of the plaintiff, and for the educational, benevolent, protective and social departments growing out of and related to the nonsectarian religious work of the plaintiff in the premises comprising the property upon which the taxes involved in this action have been

levied; and that no part of such revenue has ever been used otherwise.

"That said plaintiff in using the property described herein in aid of its nonsectarian religious purposes has allowed the basement therein to be used for nonsectarian religious purposes by the Union Gospel Mission, a nonsectarian religious organization or association, organized and conducted primarily and chiefly for religious purposes and not for profit, which portion of said premises has been wholly and solely used for the religious purposes of such organization and for the educational benevolent, protective and social departments growing out of and related to the religious work of such organization or association in the carrying on of the same nonsectarian religious purposes for which the remainder of said premises, excepting said three stores, has been wholly and solely used by plaintiff during all the times material to this action."

The statute law applicable is contained in Rem. Rev. Stat., § 11111, from which we quote:

"The following property, to the extent herein limited, shall be exempt from taxation:

"First: All lands used exclusively for public burying grounds or cemeteries, all churches built and supported by donations whose seats are free to all, and the grounds whereon such churches are built, not exceeding one hundred and twenty feet by two hundred feet in quantity, together with a parsonage: *Provided,* That in any case the area exempted shall include all ground covered by such churches and parsonages and the structures and ground necessary for street access, light and ventilation, but the area of unoccupied ground exempted in connection with both church and parsonage under this proviso shall not exceed the equivalent of 120 by 120 feet. The parsonage need not be on land contiguous to the church property if the total area exempted does not exceed the area above designated: *Provided,* That such grounds are used wholly for church purposes and not otherwise; also the property of other nonsectarian organizations or associations, organized and conducted primarily and chiefly

for religious purposes and not for profit, which shall be wholly used, or to the extent solely used for the religious purposes of such association, or for the educational, benevolent, protective or social departments growing out of, or related to, the religious work of such associations: *Provided,* Such purposes are for the general public good and such properties are devoted to the general public benefit; . . ."

■ Appellants' first two questions, which we will consider as one, are based upon the thought that the respondent is a sectarian institution; and since this property is not used strictly as a sectarian church, but rather as a nonsectarian activity under the terms of the statute quoted, therefore the respondent, being sectarian, cannot claim the exemption to which it would be entitled if it were nonsectarian.

As we read the statute, it first exempts churches as such, and it was undoubtedly the legislative intent to exempt all churches without regard to denomination or sect. Realizing that churches usually are sectarian organizations, but that nonsectarian organizations might also exist and carry on religious work with educational, benevolent, protective and social adjuncts, the act provides that their property so used shall likewise be exempted.

As we see it, sectarianism has, therefore, nothing to do with the question here involved. Whether the owner be sectarian or nonsectarian, the use to which the property is devoted determines the question of exemption from taxation.

■ Appellants next ask: Does the fact that property belonging to a church is leased to another organization engaged in a religious work and the rental received used to carry on the religious work of the lessor, operate to exempt from taxation the property so leased?

We think not. When the owner leases property, he parts with the possession and the use for a consideration. He owns and holds the property for the purpose of receiving an income therefrom, and his use is therefore purely a commercial one. We see nothing in the statute to the effect that one renting property to another for a consideration may have that property exempted from taxation because of the use to which the lessee puts the property. The property leased is not and cannot be used "for the religious purpose of such association," which is the lessor. The answer to this question will be further elaborated by what is said in answer to other questions.

The remaining questions are: Does the fact that a portion of the building is used for a chapel exempt the entire building; and may a building used in part for religious purposes and in part for commercial purposes be segregated, in proportion to space or at all, for the purpose of exemption from taxation? These questions, we think, so trench upon one another as to render a general discussion of both desirable.

In considering statutes exempting property from taxation, the cardinal rule requires strict construction in favor of the public and the right to tax. *Thurston County v. Sisters of Charity of House of Providence,* 14 Wash. 264, 44 Pac. 252, and *Foley v. Oberlin Congregational Church,* 67 Wash. 280, 121 Pac. 65.

"If an exemption is found to exist, it must not be enlarged by construction, since the reasonable presumption is that the state has granted in express terms all it intended to grant at all, and that unless the privilege is limited to the very terms of the statute the favor would be extended beyond what was meant." 2 Cooley on Taxation (4th ed.), § 672.

With this rule in mind, let us examine the words of the statute:

590

"Also the property . . . which shall be wholly used, or to the extent solely used for the religious purposes of such association, or for the educational, benevolent, protective or social departments growing out of, or related to, the religious work of such associations:"

Under the rule of strict construction, the meaning of these words is so plain and unambiguous as to require no construction; and the answer to appellants' questions seems apparent.

Property leased is not wholly and solely used for religious purposes because the rental received is expended for the furtherance of such purposes. To hold otherwise, would permit of religious organizations being endowed with vast holdings of real estate consisting of business blocks and other large improved properties devoted to commercial uses, all of which would be exempted from taxation by the mere using of the revenue for the support of religious work. We find nothing in the statute indicating that such was the legislative intent. On this subject, the respondent relies upon *Trinidad v. Sagrada Orden de Predicadores*, 263 U. S. 578, 44 S. Ct. 204, and other similar authorities which, in effect, hold that a religious or charitable institution does not lose its character as such because it receives an income from some of its property, or some of its activities, which income it devotes to its main purpose. But none of those authorities tend in any wise to justify overlooking the exact and peculiar language of our statute.

The language of the statute "wholly used, or to the extent solely used," indicates the possibility of segregation in some cases. Here, clearly all those parts of the building which are rented to others are subject to taxation, and if susceptible of segregation, may be taxed separately; while the remainder of the building used for a chapel and the benevolent work carried on

in connection therewith, if it can be segregated, is clearly entitled to exemption under the terms of the statute.

The case of *First Methodist Episcopal Church of Chicago v. Chicago,* 26 Ill. 482, not only supports the views we have already expressed, but sanctions the idea of segregation. This is an old case, but so far as we are advised its doctrine has never been questioned or repudiated.

We therefore hold that the land itself, the basement and the entire first floor of the building are not wholly used for the purpose designated by the statute, and therefore are not exempt. The building above the first floor is used wholly for religious purposes and those adjuncts thereto which the statute recognizes, and may be segregated and exempted.

The judgment will be reversed, and the cause remanded with the directions to ascertain the assessed value of the segregated parts of the building, and to enjoin the collection only of so much of the tax as is in excess of the amount properly chargeable against that segregated part here held to be not exempt from taxation.

Reversed and remanded.

BEALS, C. J., BLAKE, HOLCOMB, and GERAGHTY, JJ., concur.