[No. 25539. *En Banc.* July 15, 1935.]

YAKIMA FRUIT GROWERS ASSOCIATION *et al., Respondents,* v. HAROLD H. HENNEFORD *et al., Appellants,* CASHMERE FRUIT GROWERS UNION *et al., Interveners-Respondents.*[1]

*The Attorney General* and *R. G. Sharpe, Assistant,* for appellants.

*Richards, Conklin & Delle* and *Croson & Bayley,* for respondents Yakima Fruit Growers Association *et al.*

*Velikanje & Velikanje* and *Clark & Grady,* for respondent Yakima County Horticultural Union.

[1]Reported in 47 P. (2d) 831.

MAIN, J.—The plaintiffs brought this action to restrain the defendants, as members of the state tax commission, from enforcing chapter 191 of the Laws of 1933, p. 869, Rem. 1934 Sup., § 8326-1 [P. C. § 7068-31] *et seq.*, as against them. To the complaint, a demurrer was interposed and overruled. Subsequently, other parties intervened and sought the same relief. The cause was tried to the court without a jury, and resulted in a judgment, no formal findings of fact having been made, granting the relief sought, from which the defendants appeal.

The respondents, including both plaintiffs and the interveners, are corporations organized under the laws of this state. Their plan of organization and method of doing business were substantially the same, and the facts as to such organization and method of doing business will be stated only as to one of them, that of the Yakima County Horticultural Union.

That corporation has a capital stock of one million dollars, divided into one hundred thousand shares of the par value of ten dollars per share. At the time of the trial, 81,563 shares of this stock had been issued. The original stockholders were all fruit growers in what may be termed the Yakima valley. Such a grower, in becoming a member of the corporation, acquired a number of shares of the stock in accordance with his land acreage which was producing. Two shares of stock were allotted to each producing acre. If the member ceased to be a fruit grower, he retained his stock, and, if he again became a producer, he might apply it to his new acreage. Approximately twenty per cent of the stock issued is now held by non-producers. The corporation was not organized for profit, and makes none.

Each of the producers entered into a contract with the corporation by which he agrees to deliver to it all

the fruit produced. The corporation assists in the production, storage and sale by providing spraying material, boxes, and other necessary things in the production, and provides warehouses, cold storage plants, and a selling organization. At the beginning of the season, the corporation makes a charge to each member estimated to be sufficient to cover the costs of operation for that season. After the sale and deduction of expenses, the balance, if any, is distributed to the producers in proportion to the amount of apples each produced and sold through the corporation, with the exception of what would amount generally to a dividend of approximately six per cent on the stock. This is then distributed to the non-producing members, and also to the producing. The reason for this is to give to the non-producing member some reasonable compensation for the investment which he has in the corporation and which he is not then using.

There is such a similarity between the plan of organization and the method of doing business of the other respondents to that of the Yakima County Horticultural Union that, if this corporation is exempt from chapter 191, Laws of 1933, p. 869, Rem. 1934 Sup., § 8326-1 [P. C. § 7068-31] *et seq.,* the occupation tax law, they are also exempt.

 The appellants first say that the court erred in not sustaining their demurrer, on the ground that the causes of action were improperly joined. Rem. Rev. Stat., § 308-2 [P. C. § 8676-5], provides that all persons may be joined in one action, as plaintiffs, in whom any right to relief in respect of, or arising out of,

". . . the same transaction or series of transactions, is alleged to exist, whether jointly, severally or in the alternative, where, if such persons brought separate actions, any common question of law or fact would arise; Provided, that if, upon the application of

any party, it shall appear that such joinder would embarrass or delay the trial of the action, the court may order separate trials or make such other order as may be expedient, . . ."

The appellants did not move for a separate trial, and the record shows no prejudice to them by reason of the joinder in the action and the trial. It follows, therefore, that, even though in the complaint there was a misjoinder, a question which we do not decide, it is now immaterial and furnishes no basis for disturbing the judgment entered.

Coming now to the merits, the sole question for decision is whether the respondents are exempt from paying an occupation tax.

Chapter 57 of Laws of 1933, Ex. Ses., p. 157, amends chapter 191 of the Laws of 1933, p. 869, by adding thereto a new section to be known as § 2-a (Rem. 1934 Sup., § 8326-2a [P. C. § 7068-32a]), which provides that, from and after the first day of January, 1934, and until the thirty-first day of July, 1935,

". . . there is hereby levied and there shall be collected from every person engaging or continuing within this state . . . in any business not specifically taxable under section 2 of this act, an annual tax or excise for the privilege of engaging in such business; . . ."

Subdivision (7) of § 1 of chapter 191, p. 869, defines engaging in business as follows:

"The word 'business' shall include all activities engaged in with the object of gain, benefit or advantage either direct or indirect, . . ." Rem. 1934 Sup., § 8326-1 [P. C. § 7068-31].

Section 3 of chapter 57 amends § 4 of chapter 191, and provides:

"Section 4. The following persons shall be exempted from the provisions of this act: . . .

"(2) Persons engaging in the business of:

"(a) Growing or cultivating for sale, profit or use any agricultural or horticultural product or crop." Rem. 1934 Sup., § 8326-4 [P. C. § 7068-34].

Inquiry must then be directed as to whether the respondents are engaged in business for the purpose of gain, benefit or advantage. Obviously, there is no benefit or advantage accruing to any of them from their operations, either direct or indirect. If there is any gain accruing to any of them, it must be in the form of what might be called "profit."

The appellants say that the respondents, in their method of doing business, are independent contractors, and cite a number of cases, which we have examined, but which, in our opinion, do not sustain the contention. The respondents cite a number of cases holding the relationship between members of cooperative associations and the corporations to be that of agency, and this appears to be the generally accepted rule with reference to such organizations. There is some similarity between the methods of doing business by the cooperative associations and the methods of doing business by the respondents.

No case has been called to our attention which has discussed or decided the precise question here for determination. If one individual grower produced, packed, warehoused and sold his crop, it would hardly be contended that he did not come within the exception of the statute. If two or more should pool their crops and cooperate in the packing, warehousing and selling, the situation would not be different from that of the individual grower.

The evidence in this case shows that there are in the Yakima valley a number of large producers who individually do all of these things for themselves, and

they, of course, would not be under the act. We see no reason for holding that, because a large number of producers, most of whom are not what would be called large producers, cause a corporation to be organized for the purpose of assisting them in the production, packing, warehousing and sale, they should not be on the same basis as a producer individually, whether large or small, or two or more persons cooperating together by joint enterprise rather than by corporate entity. The fact that they operate through a corporate entity in which they own the stock and the corporation makes no profit and distributes the proceeds after a sale and the payment of the expenses on a pro rata per box basis, does not put them in a materially different situation than if two or more of them cooperated simply as members of a joint undertaking without corporate existence.

The fact that a certain percentage of the members of the corporation are not producers, owing to the fact that they had sold their orchard land, is merely incidental, and is not of controlling importance. In any reasonable sense, the respondents, as corporations, are not engaged in business for profit, and, in fact, they do not make any. They are merely the agents of their stockholders, the producers, and are not, as already indicated, independent contractors.

It has been said that, inasmuch as we are dealing with an exemption from taxation, the rule of strict construction applies, and this will be admitted. That rule, however, does not call for giving to the words used in creating the exemption anything but their ordinary meaning. As we view it, the legislative intent is not stated in ambiguous language, nor is it doubtful.

The appellants present another question which, in view of the judgment entered by the trial court, which we sustain, has now become immaterial, and for this

reason we shall pass the question without discussion or decision.

The judgment will be affirmed.

MILLARD, C. J., MITCHELL, STEINERT, GERAGHTY, and HOLCOMB, JJ., concur.

TOLMAN, J. (dissenting)—Taxation has always been and now more than ever must continue to be the rule. Exemption from taxation is the exception to that rule, and the legislative intent to exempt must clearly appear, and the person who seeks exemption from taxation must bring himself clearly within the exempted class.

Reading the act carefully, it appears that it exempts only those persons who are engaged in growing or cultivating for sale, profit or use, any agricultural or horticultural product. Respondents seek to bring themselves within that exempted class. In my opinion, they have utterly failed to do so. They are corporations organized for the purpose of making a profit, and they actually do make a profit and pay a dividend to their stockholders who are investors only. If one-fifth of their stockholders are investors and receive dividends of six per cent upon their investment, how can it be said that the corporations make no profit?

I express no opinion as to what rule should be applied to purely cooperative corporations, but respondents are not purely cooperative, and if even one per cent of their stockholders are investors making a profit, that is sufficient to take the corporations out of the exempted class and to defeat any claim of exemption by them.

I therefore dissent.

BEALS and BLAKE, JJ., concur with TOLMAN, J.