[No. 42453.    En Banc.    May 24, 1973.]

YAKIMA FIRST BAPTIST HOMES, INC., *Respondent*, v. DALE A. GRAY *et al.*, *Appellants*.

*Lincoln E. Shropshire, Prosecuting Attorney,* and *Jerry D. Talbott, Deputy,* for appellants.

*Pat Cockrill* (of *Hovis, Cockrill & Roy*), for respondent.

*Ronald L. Hendry, Prosecuting Attorney,* and *Michael B. Hansen, Deputy,* amici curiae.

WRIGHT, J.—This is an action wherein respondent, Yakima First Baptist Homes, Inc., seeks to have property commonly known as Sun Tower declared exempt from taxation, to have an injunction issued against certain county officials to prevent the assessing and collecting of taxes upon the property in the future, and to recover certain taxes previously paid under protest.

Respondent is a nonprofit corporation of the state of Washington, having been incorporated in 1966. There are 11 persons on the corporation's board of directors who serve without compensation and who are all members of the First Baptist Church in Yakima, Washington.

Sun Tower is the name given to a 12-story concrete and steel building located in Yakima. It is owned by respondent. The building contains 153 units and was opened on September 3, 1968. The facility does not admit any person under the age of 62 years, except a married couple will be admitted if one of them is 62 or more years old.

The building contains a central dining facility and some central recreational facilities. The dining facility furnishes the evening meal for an additional charge, and during half of each year furnishes a noon meal. There are also other services available for an additional fee.

The average age of the residents is 78.8 years. No person is admitted unless he can move about with no more assistance than a cane, and a person who ceases to meet that test is required to leave. About two-thirds of the residents can come and go at will, and enjoy relatively good health.

Any income from rents and other charges is devoted to payment of the various loans respondent has secured to build Sun Tower and start its operation, and to the payment of operating expenses. The only staff members are a supervisor, a bookkeeper, and a janitor.

Two questions are presented. First, is there statutory authority for the issuance of an injunction herein, and second, is the property exempt from taxation by statute?

The statutory authority for the injunction is found in RCW 84.68.010, which provides in part:

Injunctions and restraining orders shall not be issued or granted to restrain the collection of any tax or any part thereof, or the sale of any property for the nonpayment of any tax or part thereof, except in the following cases:
(1) Where the law under which the tax is imposed is void;
(2) *Where the property upon which the tax is imposed is exempt from taxation*; . . .

(Italics ours.) The respondent herein contends the property is exempt from taxation, and, therefore, respondent may seek an injunction.

We next reach the question of whether Sun Tower is exempt. We will first consider the claim of appellants that RCW 84.36.040 is unconstitutional. We find no merit in that contention.

RCW 84.36.040 reads in part:

The following property shall be exempt from taxation:
All free public libraries, orphanages, orphan asylums, institutions for the reformation of fallen women, homes for the aged and infirm, and hospitals for the care of the sick, when such institutions are supported in whole or in part by public donations or private charity, and all of the income and profits thereof are devoted, after paying the

expenses thereof, to the purposes of such institutions; and the grounds, together with all real and personal property owned or used as a part of such institutions, whenever such libraries, orphanages, institutions, homes, and hospitals are built and used exclusively for the purposes herein enumerated.

In order to determine whether such libraries, orphanages, institutions, homes, and hospitals are exempt from taxes within the intent of this chapter, the director of revenue shall have access to their books and the superintendent or manager of the library, orphanage, institution, home, or hospital claiming exemption from taxation shall file, with the assessor on forms furnished by the director, a signed statement that the income and the receipts thereof, including donations to it, have been applied to the actual expenses of maintaining it, and to no other purpose.

As far as is relevant here, the exemption applies to homes for the aged and infirm if supported in whole or in part by donations of public or private funds and if the funds and property of such homes are used exclusively for the purpose of providing and maintaining a home for the aged and infirm. The argument, which is not supported by any authority, is that the provision violates the equal protection provisions of the state constitution, article 1, section 12. It is claimed there are other elderly persons not living in such "homes" and they receive no similar benefit.

■ The exemption from taxation is granted to the home and its property, not to the individual tenant or occupant of the home. Any advantage which the individual receives is purely incidental and indirect. Furthermore, there is a reasonable basis of classification. *Sparkman & McLean Co. v. Govan Inv. Trust,* 78 Wn.2d 584, 478 P.2d 232 (1970); *State ex rel. Namer Inv. Corp. v. Williams,* 73 Wn.2d 1, 435 P.2d 975 (1968).

Appellants also contend that Sun Tower is not exempt under RCW 84.36.040. That contention is divided into several parts (1) that Sun Tower is not a "home", (2) that the residents are not aged and infirm, (3) that the funds are not wholly devoted to maintenance and expenses and, (4)

that the institution is not supported in whole or in part by public donations or private charity.

The primary rule, which has been stated many times in this state, is that an exemption in a taxing statute is to be construed strictly against the claim of exemption. We said in *Pacific Northwest Conf. of the Free Meth. Church of N. America v. Barlow*, 77 Wn.2d 487, 492, 463 P.2d 626 (1969), ". . . all presumptions are against an intention of the state to bind itself by the exemption of property from taxation, . . ."

Unless Sun Tower meets all of the requirements of the statute, it cannot be exempt under RCW 84.36.040.

It is therefore necessary to consider only one criterion in order to demonstrate that Sun Tower cannot qualify under RCW 84.36.040. The requirement that "such institutions are supported in whole or in part by public donations or private charity" cannot be met. Words in a statute are to be given their ordinary or common meaning when that is not inconsistent with the obvious legislative intent. *Foremost Dairies, Inc. v. Tax Comm'n*, 75 Wn.2d 758, 453 P.2d 870 (1969); *State ex rel. Longview Fire Fighters Union v. Longview*, 65 Wn.2d 568, 399 P.2d 1 (1965); *Bixler v. Hille*, 80 Wn.2d 668, 497 P.2d 594 (1972) and cases cited therein. The above rule has been applied to exemptions from taxation. *Yakima Fruit Growers Ass'n v. Henneford*, 182 Wash. 437, 47 P.2d 831, 100 A.L.R. 435 (1935).

What, then, does the word "supported" mean? "Support" is defined in Webster's Third New International Dictionary (1968), among other meanings, as "to pay the costs of . . . maintain . . . to furnish funds for maintaining". The word in ordinary use would imply the idea of day-to-day maintenance rather than first cost of construction or cost of furnishing the building.

The principal source of funds for the construction of Sun Tower was a loan of nearly two million dollars from the federal government at a very low rate of interest. Without the low interest rate it would have been impossible to construct the project. There was a loan of $59,000 from the

First Baptist Church, of which $32,000 was returned to the church from federal funds. The church also loaned $23,000 for working capital.

The First Baptist Church gave to Yakima First Baptist Homes, Inc. $8,300 for furnishing and equipping certain common areas. Donations totaling $6,422 in cash or furnishings were received from various contributors.

The source of funds for the maintenance of Sun Tower was covered by the trial court's finding of fact No. 13, which read:

> The annual operating costs of plaintiff are derived from the following sources:
> a. Rent paid by the residents.
> b. Federal Rent Subsidies paid directly by the Federal Government to the plaintiff. The plaintiff has a separate contract with the Federal Government pursuant to which plaintiff is required to devote a certain number of its units to very low income aged persons and for which plaintiff receives a direct rent subsidy payment from the government. Twenty per cent of plaintiff's units presently are devoted to persons in this extremely restricted income bracket.
> c. Miscellaneous donations, frequently of the free use of equipment without which many of the plaintiff's programs could not be carried out.

■ The findings of fact clearly show that the funds for operation of Sun Tower come almost entirely from rents and rent subsidies. The rent subsidy is denominated in the finding as being under a "contract". It is, therefore, not a "public donation" as that term is used in the statute.

■ The amounts received from contributions appear from the finding to be extremely small, and to a substantial extent to consist of the loan of items of equipment. Such minimal contributions do not bring respondent within the provision for being supported "in part by public donations or private charity". While it is true the language of the statute might be otherwise construed, such a construction would be absurd.

To hold an exemption from taxation could result from any contribution, no matter how small, would open the

door to fraud upon the public. Furthermore, such a construction would be contrary to the spirit of the law, and to the rules for the construction of tax exemption statutes as herein stated.

■ Absurd consequences are to be avoided in the construction of a statute. *State ex rel. Thorp v. Devin,* 26 Wn.2d 333, 173 P.2d 994 (1946); *In re Horse Heaven Irr. Dist.,* 11 Wn.2d 218, 118 P.2d 972 (1941); *Lenci v. Seattle,* 63 Wn.2d 664, 338 P.2d 926 (1964).

■ Findings of fact supported by ample evidence will not be disturbed nor reviewed on appeal. *Sylvester v. Imhoff,* 81 Wn.2d 637, 639, 503 P.2d 734 (1972).

The other question is whether the property is exempt from taxation under RCW 84.36.030, which reads in part:

> The following property shall be exempt from taxation:
> Property owned by nonsectarian organizations or associations, organized and conducted primarily and chiefly for religious purposes and not for profit, which shall be used, or to the extent solely used, for the religious purposes of such associations, or for the educational, benevolent, protective, or social departments growing out of, or related to, the religious work of such associations;

Under this section the matters in dispute are if the organization is nonsectarian and if the property is devoted to a religious purpose.

■ It seems fairly clear in this case even if the organization, Yakima First Baptist Homes, Inc., is sectarian, the use to which Sun Tower is put is nonsectarian. Under Washington law, as announced in numerous cases, it is the use to which the property is put that determines its exempt character. *Pacific Northwest Conf. of the Free Meth. Church of N. America v. Barlow, supra; Norwegian Lutheran Church of America v. Wooster,* 176 Wash. 581, 30 P.2d 381 (1934); *Wesley Foundation v. King County,* 185 Wash. 12, 52 P.2d 1247 (1935).

It is contended by respondent that the care of the aged is a religious purpose. Although the practice of charity, of kindness to other persons and in particular to the aged, and

the practice of all of the virtues are acts encouraged by religious organizations generally, it cannot be said this is a religious purpose within the commonly accepted definitions of the word "religious". Without a religious purpose, respondent is not entitled to an exemption under RCW 84.36.030.

The judgment is reversed.

HALE, C.J., ROSELLINI, HAMILTON, and STAFFORD, JJ., concur.

FINLEY, J. (dissenting)—Because the record in this case supports the trial court's findings of fact and its conclusion that the respondent's home for the aged and infirm qualifies for property tax exemption under RCW 84.36.040, I am compelled to dissent.

The pertinent portions of RCW 84.36.040, as set out in the majority opinion, establish a fourfold test for property tax exemption:

> [1. *Nature and Purpose of the Property*] All free public libraries, orphanages, orphan asylums, institutions for the reformation of fallen women, homes for the aged and infirm, and hospitals for the care of the sick, [2. *Funding*] when such institutions are supported in whole or in part by public donations or private charity, [3. *Use of Funds*] and all of the income and profits thereof are devoted, after paying the expenses thereof, to the purposes of such institutions; [4. *Exclusive Use of Property*] and the grounds, together with all real and personal property owned or used as a part of such institutions, whenever such libraries, orphanages, institutions, homes, and hospitals are built and used exclusively for the purposes herein enumerated.

RCW 84.36.040.

Regarding the first requirement concerning the nature and purpose of the property, the trial court's findings support the contention that the property under consideration qualifies as a home "for the aged and infirm" (RCW 84.36.040):

15. The popular name for plaintiff's facility is The Sun

Tower. To be accepted as a resident of Sun Tower an applicant must at the time of initial acceptance be ambulatory and at least 62 years of age unless physically handicapped. If married at least one spouse must be 62 years of age. There are no restrictions on race or religion. The average age of the tenants is 78.8 years.

Finding of fact No. 15. This finding is supported by the trial testimony of Marion Bunnell, president and chairman of the board of Yakima First Baptist Homes, Inc., as well as by Mr. Bunnell's answer to interrogatories to plaintiff No. 14, made a part of the trial record. In addition, the trial court found:

9. The plaintiff came into being as an outgrowth of the religious concern of the congregation of the Yakima First Baptist Church for the needs of the elderly poor of Yakima, and was organized and incorporated by certain members of said church for the following purposes and objectives as set forth in its Amended Articles of Incorporation to-wit:

"a) To provide for elderly families and elderly persons on a non-profit basis rental housing and related facilities and services specially designed to meet the physical, social and psychological needs of the aged, and contribute to their health, security, happiness and usefulness in longer living.

b) To plan, construct, operate, maintain and improve rental housing and related facilities and services for elderly families and elderly persons.

Finding of fact No. 9. From the foregoing, it is evident that the nature and purpose of the property under consideration is to provide a home for the aged and infirm, therefore meeting the first statutory requirement of RCW 84.36.040.[1]

---

[1]Concerning the statutory phrase, "aged and infirm", the amicus curiae, Pierce County, argues that this means that all persons in such a home must be both elderly *and* infirm in order for the facility to qualify for property tax exemption. It is evident, however, that if the legislature had intended to require that each resident of such a facility meet both criteria, it could well have so phrased this strict requirement in a manner such as "homes for persons both aged and infirm". It is clear that such a requirement would be extremely restrictive, and would effectively prevent the operation of many homes for the elderly. Where a commonsense construction of the statute is at hand, it is not

The second requirement of the statute, concerning funding, appears to pose the greatest difficulty for the majority opinion. In this area the trial court found the following:

12. In order to commence operations of the facility the following financing was required and obtained from the sources indicated:

a. . . .

b. Furnishings and equipment in common areas: $8,300.00 obtained by a gift from the Baptist Church aforesaid and in excess of $6,422.00 in miscellaneous gifts or donations of cash or furnishings from such sources as the Bank Clearing House, Pacific Power and Light Company and a wide variety of private individuals.

13. The annual operating costs of plaintiff are derived from the following sources:

a. . . .

b. Federal Rent Subsidies paid directly by the Federal Government to the plaintiff. The plaintiff has a separate contract with the Federal Government pursuant to which plaintiff is required to devote a certain number of its units to very low income aged persons and for which plaintiff receives a direct rent subsidy payment from the Government. Twenty per cent of plaintiff's units presently are devoted to persons in this extremely restricted income bracket.

c. Miscellaneous donations, frequently of the free use of equipment without which many of the plaintiff's programs could not be carried out.

Findings of fact Nos. 12 and 13. According to Mr. Bunnell, the federal rent subsidy amounts to about $23,000 per year, and, in addition to the donations of the above-listed sources, 100 special pledges of funds have been donated by individual members of the public since 1966. The majority opinion dismisses the federal rent subsidy monies as being "under a 'contract' ", and "therefore, not a 'public donation' as that term is used in the statute." Such reasoning seems

the function of this court to reach an extreme and unrealistic conclusion in statutory interpretation. It is evident that the state is as concerned with promoting homes for the aged as it is for the infirm. In the instant case, one-third of the residents at Sun Tower are infirm; all are aged.

to me more ingenuous than ingenious and not very convincing. Furthermore, the issue was not raised by appellant. Notwithstanding this procedural complication, however, it is evident that the intent of the federal government in giving these subsidy monies, no matter how it is done, is no different than that of the individual members of the public whose donations were somewhat less in amount: That is, to financially assist in the maintenance and operation of a home that provides food and shelter for elderly and infirm persons of limited income. Clearly, both the rent subsidy and the other gifts from individual businesses and members of the public constitute "public donations". The only real objection of the majority to the trial court's finding of "public donation" is that the "amounts received from contributions appear from the finding to be extremely small." Upon this basis of comparative size, the majority urges that these public contributions be disregarded and nullified to avoid the perpetration of "fraud upon the public." Drawing a line such as this, upon the basis of comparative size of donation and actual operative cost, in my judgment, is arbitrary and unsupportable. The statute requires support in part by public donations; it does not establish a quota for public donations at 50 percent, 35 percent, or even 10 percent of actual operating costs. Under the facts of the instant case, it is evident that these honest and well-meant gifts of the public are not token elements in some elaborate scheme of the corporation to perpetrate a fraud upon the public by erecting an unfair tax shelter. Where the donations of the public, including nonmonetary gifts from members of the community, are made with the good faith intent of assisting in the maintenance of housing and programs for the elderly and infirm, it seems a non sequitur at best to conclude without any supportive basis in fact—as does the majority—that such donations are part of a fraudulent scheme. With this in mind, it is evident that this home for the aged and infirm under consideration is "supported in whole or in part by public donations." RCW 84.36.040.

The third portion of the statute requires that all income and profits be devoted to the purposes of the institution. This fact was found by the trial court, and is supported by the trial testimony of Marion Bunnell who stated that the organization is making no profit. Mr. Elmer Rongren, treasurer of the corporation, testified that all income received is spent exclusively on the maintenance and repair of the facility and on the repayment of loans for its construction. The trial court was therefore correct in concluding that all of the income and profits of Sun Tower are devoted, after paying the expenses thereof, to the purposes of the institution. Indeed, the majority and dissenting opinions are in explicit agreement on this point.

The last section of RCW 84.36.040 pertinent to this discussion requires that all property to be exempted be "built and used exclusively" for the purposes of the institution. This the trial court found concerning the "grounds, building and all real and personal property" of the Sun Tower facility (finding of fact No. 22). The entire trial record is replete with evidence that the apartment units, dining area, meeting hall, and all other areas of the facility are used solely for the purpose of offering programs and housing for the elderly and infirm.

Because the trial court found that the Sun Tower facility qualified for tax exemption under each criterion of RCW 84.36.040, and because each relevant finding of the trial court is supported by the record, including testimony and documents, the property tax exemption under consideration was, in my best judgment, properly granted under RCW 84.36.040.[2]

---

[2]An interesting issue which may have induced a contrary conclusion of law concerns whether the application of RCW 84.36.040 to the Sun Tower facility violates the First Amendment establishment of religion clause, under the immediate circumstances of de facto ownership and operation by what appears to be a sectarian organization. However, this issue was not raised on appeal and therefore is not before the court. Similarly, because the application of RCW 84.36.030 (property tax exemption for property owned by nonsectarian religious organizations) to the immediate request for exemption may pose constitutional ques-

Upon the basis of the preceding reasoning, I would affirm that portion of the trial court's ruling awarding the exemption under RCW 84.36.040.

HUNTER and UTTER, JJ., concur with FINLEY, J.

Petition for rehearing denied August 8, 1973.

tions concerning the establishment of religion, no attempt has been made in this dissent to defend the trial court's conclusion that Sun Tower qualifies for exemption under this statute.